**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

FILED

2006 SEP 25  PM 2: 18

CLERK U DISTRICT COURT
WESTERN DIST CT OF TEXAS

BY _____
DEPUTY

| | |
|---|---|
| DAVID NORMAN, individually and on behalf of all others similarly situated, | : |
| Plaintiff, | : NO. __A06CA758 LY__ |
| v. | : |
| DELL, INC., ALAN G. LAFLEY, KEVIN B. ROLLINS, DONALD J. CARTY, MICHAEL S. DELL, JUDY C. LEWENT, WILLIAM H. GRAY, III, THOMAS W. LUCE, III, SALLIE L. KRAWCHECK, KLAUS S. LUFT, ALEX J. MANDL, MICHAEL H. JORDAN, MICHAEL A. MILES, SAMUEL A. NUNN, JR., MORTON L. TOPFER, THOMAS H. WELCH, and JOHN DOES 1-30, | : **CLASS ACTION COMPLAINT** |
| Defendants. | : |

Plaintiff, David Norman ("Plaintiff"), individually, as a representative of the Dell Inc., 401(k) Plan (the "Plan"), and on behalf of a class of similarly situated participants in the Plan (the "Participants"), by his attorneys, alleges the following for his Complaint ("Complaint"):

## I. NATURE OF THE ACTION AND SUMMARY OF CLAIMS

1.      Plaintiff, a Participant in the Plan, brings this action against Dell, Inc. ("Dell" or the "Company") and others individually, as a representative of the Plan for Plan-wide relief and on behalf of a class of the Plan and all Participants in the Plan for whose individual accounts the Plan invested in the Dell, Inc. Common Stock Fund (the "Fund") from February 13, 2003 to the present (the "Class Period"). Plaintiff brings this action on behalf of both the Plan and the Plan's

Participants and beneficiaries pursuant to § 502(a)(2) and (3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(2)and (3).

2.      As more fully set forth below, Defendants breached their fiduciary duties owed to the Plan and the Participants, including those fiduciary duties set forth in ERISA § 404, 29 U.S.C. § 1104, and Department of Labor Regulations, 29 C.F.R. § 2550.  As a result of these breaches, Defendants are liable to the Plan for all losses resulting from each such breach of fiduciary duty.  Plaintiff also seeks equitable relief.

3.      Plaintiff's claims arise out of Dell's failure to disclose its declining sales, market share and profit margins and its improper revenue recognition, accrual and reserve accounting practices which caused Dell's financial statements to be misleading.

4.       These improper activities artificially inflated the value of Fund and Dell common stock shares.  Yet, throughout the Class Period, the Plan continued to invest in the Fund and the Fund continued to invest in Dell stock.

5.      Plaintiff alleges that it was imprudent to permit the Plan to invest in the Fund and the Fund to invest in Dell stock because the prices of the Fund and Company stock were artificially inflated.  Plaintiff also alleges that Defendants breached their fiduciary duties by negligently failing to disclose material information necessary for Participants to make informed decisions concerning the Plan's assets and benefits and investing in the Fund.  Finally, Plaintiff alleges that those Defendants who had a duty to appoint and monitor those fiduciaries with authority or control over Plan assets breached their duty to appoint and monitor.

2

## II. JURISDICTION AND VENUE

6.      Plaintiff's claims arise under and pursuant to ERISA § 502, 29 USC § 1132.

7.      This Court has jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

8.      Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because this is the district where the Plan is administered, where the breaches took place and where one or more defendants reside or may be found.

## III. THE PARTIES

### Plaintiff

9.      Plaintiff David Norman is a resident of the State of Oregon. Plaintiff is a Participant in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).

### Defendants

10.     Defendant Dell is a Delaware corporation with its principal place at One Dell Way, Round Rock, Texas. Dell engages in the development, manufacture, and marketing of computer products. Dell is the Plan's sponsor and a fiduciary of the Plan.

11.     The Board of Directors of the Company had the duty to appoint and monitor the members of the  Administration Committee.  The Board as an entity and each of the following who were members of the Board of Directors during some or all of the Class Period (collectively the "Director Defendants") are named as Defendants: Alan G. Lafley, Kevin B. Rollins, Donald J. Carty, Michael S. Dell, Judy C. Lewent, William H. Gray, III, Thomas W. Luce, III, Sallie L.

Krawcheck, Klaus S. Luft, Alex J. Mandl, Michael H. Jordan, Michael A. Miles, Samuel A. Nunn, Jr. and Morton L. Topfer.

12.     Defendant     Administration    Committee    a.k.a.    "Benefits    Administration Committee" (the "Committee") is designated as the Plan's administrator and is, along with its individual members, a fiduciary of the Plan.

13.     Defendant Thomas H. Welch ("Welch") was Dell's Vice President and "General Corporate Counsel" and a member of the Committee.

14.     Defendants John Does 1-30 are members of the Committee and, therefore, are fiduciaries of the Plan and/or exercised authority or control over the Plan, Plan assets and/or the Fund. Upon information and belief, these other members of the Committee were senior officers and employees with the Company who served on the Committee without additional compensation in the ordinary course of their employment.  As a result of their senior positions with the Company, they knew or should have known all of the facts alleged herein. (Hereinafter, the Committee, Welch and John Does 1-30 are referred to as the "Committee Defendants").

## IV. CLASS ACTION ALLEGATIONS

15.     Plaintiff brings this action in part as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class consisting of all Participants in the Plan for whose individual accounts the Plan invested in shares of the Fund from February 13, 2003 to the present (the "Class").

16.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown at this time and can only be ascertained through appropriate discovery, Plaintiff believes there are, at a minimum, thousands of members of the Class and that many or all of these were Participants for whose

accounts the Plan held interests in the Fund. For example, the Plan's 2005 Form 11-k states that the Plan had 28,334 Participants.

17.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class.  Among the questions of law and fact common to the Class are:

        (a)     whether Defendants were fiduciaries to the Plan and/or the Participants;

        (b)     whether Defendants breached their fiduciary duties;

        (c)     whether the Plan and the Participants were injured by such breaches; and

        (d)     whether the Class is entitled to damages and injunctive relief.

18.     Plaintiff's claims are typical of the claims of the members of the Class, as Plaintiff and members of the Class sustained injury arising out of Defendants' wrongful conduct in breaching their fiduciary duties and violating ERISA as complained of herein.

19.     Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has retained competent counsel.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

20.     Prosecution of separate actions by members of the Class would create a risk of inconsistent adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the class would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

21.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy since joinder of all members of the Class is impracticable. Furthermore, because the injury suffered by the individual Class members may be relatively small, the expense and burden of individual litigation makes it impracticable for the Class members individually to redress the wrongs done to them.   There will be no difficulty in the management of this action as a class action.

## V.   DESCRIPTION OF THE PLAN

22.     The Plan is an employee benefit Plan within the meaning of ERISA § 3(3) and 3(2)(A), 29 U.S.C. § 1002(3) and 1002(2)(A). The purpose of the Plan was to provide retirement benefits to Plan Participants.

23.     The Plan is a "defined contribution" or "individual account" plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34), in that the Plan provided for individual accounts for each Participant and for benefits based solely upon the amount contributed to those accounts, and any income, expenses, gains and losses, and any forfeitures of accounts of other Participants which may be allocated to such Participant's account.   Consequently, retirement benefits provided by the Plan are based solely on the amounts allocated to each individual's account.

24.     The Plan is a voluntary contribution plan whereby Participants make contributions to the Plan described under the Plan as Salary Reduction Contributions. Plan § 3.1 (collectively, the "Employee Contributions"). These Employee Contributions could range from 1-15% of eligible compensation. Id.

25.     Dell made Employer Matching Contributions which matched the Employee Contributions in the amount of 100% of the first 4% of eligible contributions, and additional

discretionary Employer Retirement Savings Contributions ("Employer Contributions"). Plan § § 3.2 and 3.3.

26.     The Employee Contributions were held in each Participant's Salary Reduction Contribution Account, and the Employer Contributions were held in each Participant's Employer Contribution Account. Plan § 4.2 (a)(b).

27.     The assets of the Plan were held in trust pursuant to a Trust Agreement ("Trust") executed between Dell and The Chase Manhattan Bank. According to the Plan, the administration of Plan assets was governed by the Trust. Plan § 11.2.

28.     Participants could cause the Plan to invest the assets held in each of their accounts in the Trust among a number of Investment Funds offered by the Plan. One of the Investment Fund which Participants could select fore the investment of Plan assets was the Dell Common Stock Fund.

## VI. DEFENDANTS WERE FIDUCIARIES

29.     At all times relevant to this Complaint, Defendants were fiduciaries of the Plan because:

(a)     they were so named; and/or

(b)     they exercised authority or control respecting management or disposition of the Plan's assets; and/or

(c)     they exercised discretionary authority or discretionary control respecting management the Plans; and/or

(d)     they had discretionary authority or discretionary responsibility in the administration of the Plan.

7

ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).  In that regard, a person is a fiduciary even if a plan does not name him as such or by its terms assign fiduciary duties to him where by his conduct he engages in fiduciary activities.  The test for whether a person (or entity) is a fiduciary is functional and based on actual conduct.  Those who have control over management of a plan or plan assets are fiduciaries regardless of the labels or duties assigned to them by the language of a plan.  Moreover, in order to fulfill the express remedial purpose of ERISA, the definition of "fiduciary" is to be construed broadly.

30.    A fiduciary may not avoid his fiduciary responsibilities under ERISA by relying solely on the language of the plan documents.  While the basic structure of a plan may be specified within limits by the plan sponsor, the fiduciary may not follow the plan document if to do so leads to an imprudent result under ERISA § 404(a)(1)(d), 29 U.S.C. § 1104(a)(1)(D).

31.    Dell was a fiduciary because it was the Plan "administrator" vested with the duty of general administration of the Plan. Plan § 10.1. Although Dell had the right to delegate some of its duties to the Committee, it retained overall responsibility for the Plan.  Id. Additionally, upon information and belief, Dell was a fiduciary in that it managed, administered and operated the Plan and Plan assets and disseminated Plan communications to Participants.   Upon information and belief, the Committee met infrequently and spent very little time on matters relating to administration of the Plan and Plan investments.  Rather, upon information and belief, these jobs were performed by Dell employees acting in the scope of their day to day duties and, in particular, by  Dell human resources, legal, corporate communications, finance and treasury personnel.

32.    The Director Defendants were fiduciaries of the Plan because they had the fiduciary duty to appoint and monitor the members of the Committee.  Plan § § 1.1 (e), 10.1.

8

They had the power and responsibility to appoint as members of the Committee persons with sufficient education, knowledge and experience to inform themselves as necessary to perform their duties as Committee members, including the duty to evaluate the merits of investment options under the Plan.  The Director Defendants also had an ongoing duty to ensure that the persons appointed to the Committee were fully informed and performing their duties properly with respect to the selection of investment options under the Plan and the investment of the assets of the Plan.

33.     The Committee and its members were fiduciaries because the Committee was the Plan Administrator. The Committee was a "named fiduciary" with respect to the general administration of the Plan. Plan § 10.1 In particular, the Committee had the fiduciary duty to monitor Plan investments and  select and monitor prudent  Investment Funds, including the Fund. Plan § 5.1.  Additionally, under the Trust, the Committee was a "named fiduciary" for Plan assets. See, Trust Preamble. As such, the Committee had the duty to "direct the Trustee as to the investment options" available for the Plan and the discretion to determine to offer the Investment Funds, including the Stock Fund. Trust § 4.

34.     Moreover, the Committee members were appointed and served on the Committee as part of and in the ordinary course of their job responsibilities without any additional compensation.  Accordingly, the Company is responsible and liable for their actions.

## VII. <u>FIDUCIARY DUTIES UNDER ERISA</u>

35.     **The Statutory Requirements.**  ERISA imposes strict fiduciary duties upon plan fiduciaries.  ERISA § 404(a), 29 U.S.C. § 1104(a), states, in relevant part, that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of

9

providing benefit to participants and their beneficiaries; and defraying reasonable expenses of administering the plan; with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims; by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and Title IV.

36.     **The Duty of Loyalty.**  ERISA imposes on a plan fiduciary the duty of loyalty--that is, the duty to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . .  providing benefits to participants and their beneficiaries . . . ."

37.     The duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur.   A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

38.     **The Duty of Prudence.**  Section 404(a)(1)(B) also imposes on a plan fiduciary the duty of prudence--that is, the duty "to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man, acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. . . ."

39.     **The Duty to Inform.**  The duties of loyalty and prudence include the duty to disclose and inform. These duties entail: 1) a negative duty not to misinform; 2) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and 3) a duty to convey complete and accurate information material to the circumstances of participants

10

and beneficiaries. These duties to disclose and inform recognize the disparity that may exist, and in this case did exist, between the training and knowledge of the fiduciaries, on the one hand, and the Participants, on the other.

40.    Pursuant to the duty to inform, fiduciaries of the Plan were required under ERISA to furnish certain information to Participants. For example, ERISA § 101, 29 U.S.C. § 1021, requires that fiduciaries furnish a Summary Plan description ("SPD") to Participants. ERISA § 102, 29 U.S.C. § 1022, provides that the SPD must apprise Participants of their rights under the Plan. The SPD and all information contained or incorporated therein constitutes a representation in a fiduciary capacity upon which Participants were entitled to rely in determining the identity and responsibilities of fiduciaries under the Plan and in making decisions concerning their benefits and investment and management of assets allocated to their accounts:

> The format of the summary plan description must not have the effect of misleading, misinforming or failing to inform participants and beneficiaries. Any description of exceptions, limitations, reductions, and other restrictions of plan benefits shall not be minimized, rendered obscure or otherwise made to appear unimportant. Such exceptions, limitations, reductions, or restrictions of plan benefits shall be described or summarized in a manner not less prominent than the style, captions, printing type, and prominence used to describe or summarize plan benefits. The advantages and disadvantages of the plan shall be presented without either exaggerating the benefits or minimizing the limitations. The description or summary of restrictive plan provisions need not be disclosed in the summary plan description in close conjunction with the description or summary of benefits, provided that adjacent to the benefit description the page on which the restrictions are described is noted.

29 C.F.R. § 2520.102-2(b).

41.    **The Duty to Investigate and Monitor Investment Alternatives.**  With respect to a pension plan such as the Plan, the duties of loyalty and prudence also entail a duty to conduct an independent investigation into, and continually to monitor, the merits of the

11

investment alternatives in the Plan including employer securities, to ensure that each investment is a suitable option for the Plan.

42.     **The Duty to Monitor Appointed Fiduciaries**.   Fiduciaries who have the responsibility for appointing other fiduciaries have the further duty to monitor the fiduciaries thus appointed.  The duty to monitor entails both giving information to and reviewing the actions of the appointed fiduciaries.  In a 401(k) plan such as the Plan the monitoring fiduciaries must therefore ensure that the appointed fiduciaries:

(a)     possess the needed credentials and experience, or use qualified advisors and service providers to fulfill their duties;

(b)     are knowledgeable about the operations of the Plan the goals of the Plan and the behavior of Plan's participants;

(c)     are provided with adequate financial resources to do their jobs;

(d)     have adequate information to do their jobs of overseeing the Plan investments with respect to company stock;

(e)     have access to outside, impartial advisors when needed;

(f)     maintain adequate records of the information on which they base their decisions and analysis with respect to Plan investment options; and

(g)     report regularly to the monitoring fiduciaries.

The monitoring fiduciaries must then review, understand, and approve the conduct of the hands-on fiduciaries.

43.     **The Duty Sometimes to Disregard Plan Documents**.   A fiduciary may not avoid his fiduciary responsibilities by relying solely on the language of the plan documents. While the basic structure of a plan may be specified, within limits, by the plan sponsor, the

12

fiduciary may not blindly follow the plan document if to do so leads to an imprudent result. ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

44.    **Co-Fiduciary Liability**.   A fiduciary is liable not only for fiduciary breaches within the sphere of his own responsibility, but also as a co-fiduciary in certain circumstances. ERISA § 405(a), 29 U.S.C. § 1105(a), states, in relevant part, that:

> In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
>> (1)    if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; or
>>
>> (2)    if, by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>>
>> (3)    if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

45.    **Non-Fiduciary Liability**.   Under ERISA non-fiduciaries who knowingly participate in a fiduciary breach may themselves be liable for certain relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

## VIII.  PARTICIPANTS ARE NOT RESPONSIBLE FOR IMPRUDENT PLAN INVESTMENTS

46.    The fact that Participants selected investments from options pre-selected by Defendants is no defense in this case.  Fiduciaries can shift liability for imprudent investments to Participants under ERISA § 404(c), 29 U.S.C. § 1104(c) only if, among other things, they meet five specific requirements:

> (a)    they disclose in advance the intent to shift liability to Participants;

(b)     they designate the Plan as a "404(c) plan" and adequately communicate this to Participants;

(c)     they ensure that Participants are not subject to undue influence;

(d)     they provide an adequate description of the investment objectives and risk and return characteristics of each investment option; and

(e)     they disclose to Participants all material information necessary for Participants to make investment decisions that they are not precluded from disclosing under other applicable law.  In this regard, fiduciaries have a choice: they can disclose all material information to Participants, including information that they are not required to disclose under the securities laws, and shift liability to Participants, or they can comply with the more limited disclosure requirement under the securities laws but remain liable for imprudent investments.

29 C.F.R. § 2550.404c-1(b)(2)(i)(B)(i) and (ii) and (c)(2)(i) and (ii).

47.     Defendants failed to shift liability to Participants for imprudent investment decisions under section 404(c) because they failed to comply with the relevant regulations.

## IX.  <u>SUBSTANTIVE ALLEGATIONS</u>

48.     Dell specializes in the development, manufacture and sale of computers and information technology products, including desktop computer systems, mobility products (notebook computer systems), software and peripherals, servers and networking products, enhanced services, and storage products.  During calendar 2005, Dell was the number one supplier of personal computer systems worldwide as well as in the United States.

49.     During the Class Period until August 17, 2006, Dell consistently represented that it posted industry leading results, unit volume growth substantially exceeding industry norms, substantial growth in all regional and product markets and double digit year over year revenue

growth. Dell consistently made these statements in its Forms- 8 k filed with the Securities and

Exchange Commission on, for example, May 13, 2003, August 14, 2003, November 13, 2003,

February 12, 2004, May 13, 2004, August 12, 2004, November 15, 2004, February 10, 2005,

May 12, 2005, August 11, 2005, October 31, 2005, February 16, 2006, March 23, 2006 and May

18, 2006.

     50.    In November, 2004, Dell projected that it would reach revenues of $60 bn. In

April, 2005, it projected that it would reach revenues of $80 bn. In April, 2006, it projected that

it would reach revenues of $100 bn.

     51.    In fact, by early 2003, Dell was experiencing a significant decline in its profit

margins, sales and market share as result of a heightened competition and an increase in its cost

of sales. Nonetheless, Dell did not accurately reveal the true nature of its declining business;

rather, it continued to report promising revenue projections which failed to disclose the true state

of the Company.

     52.    Moreover, throughout the Class Period, Dell's financial statements which were set

forth in SEC filings were false or misleading because the Company's reported profit and revenue

growth was inflated by utilizing improper accounting practices, including the inappropriate

recognition of revenue and the misstatement of accruals and reserves on the balance sheet.

     53.    On August 14, 2006, Dell announced a massive recall for batteries in laptop

computers it sold between April 1, 2004 and July 18, 2006. The estimated cost of the recall was

between $200 and $400 million.

     54.    In its 8-K filed on August 17, 2006, Dell announced that, contrary to its $100 bn

revenue projection just 4 months before, that second quarter net income had dropped 51%. More

important, Dell revealed that the SEC had begun investigating its revenue recognition practices

and other accounting and financial reporting. The August 17, 2006, press release attached to the

Form 8-K provides in relevant part:

> The SEC has requested information relating to revenue recognition and other accounting and financial reporting matters for certain past fiscal years, and Dell has been cooperating. In the course of responding to the requests, the company recently discovered information that raises potential issues relating to certain periods prior to fiscal 2006.

55. On September 11, 2006, Dell filed a disclosure on Form 8-K in which it

announced that it would delay the filing of its Form 10-Q as a result of "questions raised in

connection with the SEC's investigation into Dell's accounting practice." Dell also indicated

that they had been served with a subpoena for documents by the U.S. Attorneys office for the

Southern District of New York. The press release attached to the Form 8-K provided in relevant

part:

### DELL WILL DELAY FILING OF FORM 10-Q

. . . Dell Inc. announced today that it is delaying the filing of the Form 10-Q for its fiscal second quarter ended August 4, 2006.

> The company said it is unable to file because of questions raised in connection with the previously announced informal investigation by the U.S. Securities and Exchange Commission (SEC) into certain accounting and financial reporting matters and the subsequently initiated independent investigation by the Audit Committee of its board of directors.

> The investigations have indicated the possibility of misstatements in prior period financial reports, including issues relating to accruals, reserves and other balance sheet items that may affect the company's previously reported financial results. The company is working with the Audit Committee and with the company's independent auditors to determine if any restatements of prior period financial reports will be necessary.

> The SEC requests for information have been joined by a similar request from the United States Attorney for the Southern District of New York,

who has subpoenaed documents related to the company's financial reporting from 2002 to the present.

56.     During the Class Period, as described herein, Defendants knew or should have known that the Company Stock Fund stock and Dell stock were imprudent investment alternatives for the Plan due to the fact that Dell (a) lacked appropriate internal controls to ensure the accuracy of its financial reporting and the estimates of its future financial performance to such an extent that it could not meet its disclosure obligations under the securities laws, (b) was misstating accruals and reserves on its balance sheet, (c) was improperly recognizing revenue, (d) was suffering a severe decline in market share, (e) was suffering from a significant decrease in profit margins, (f) was failing in its effort to expand into other business areas including printers, consumer electronics, data storage and networking.  As a result of these undisclosed facts, Dell's stock price and the price of the Company Stock Fund in the Plan were artificially inflated making it an imprudent investment for Dell's retirement Plan.

## COUNT I:

### Imprudent Investment (Against the Company and the Committee Defendants)

57.     Plaintiff incorporates by reference all preceding paragraphs as if set forth fully herein.

58.     This Count is asserted against Dell, the Committee and its members.

59.     Dell and the Committee Defendants as a result of their positions with or in relation to Dell knew or should have known of the undisclosed material adverse information alleged above and knew or should have known that the price of Fund shares was artificially inflated and that the Fund was an imprudent investment.

60.     Despite the fact that they should have known that the Fund was not a prudent investment, Defendants breached their fiduciary duties by: (a) offering the Fund as an investment option for the Plan; (b) permitting the Plan to purchase shares of the Fund; (c) permitting the Plan to maintain its investments in the Fund; and (d) permitting the Fund to invest in Dell stock.

61.     Because Defendants should have known that the Fund was not a prudent investment option throughout the Class Period, they should have terminated the Fund as an investment option, halted the purchase of shares of the Fund, sold all of the Plan's shares in the Fund, sold all of the Fund's shares of Dell stock and made full disclosure of all material information to Participants.

62.     To the extent that Defendants possessed material adverse nonpublic information, they should have prevented the Plan from purchasing additional shares in the Fund. They should also have directed the Plan to sell all of their shares in the Fund and disclosed this nonpublic information prior to any sales by the Plan. Had they done so, the Plan would have limited its losses substantially, even though the price might have dropped somewhat upon disclosure.

63.     As a consequence of Defendants' breaches, the Plan suffered losses.

64.     Each Defendant is liable for the acts of the other Defendants as a co-fiduciary. Upon information and belief, each Defendant (a) knowingly participated in, or knowingly undertook to conceal the breaches of the other fiduciaries, (b) by virtue of his own breach of fiduciary duty, enabled the other Defendants to breach their fiduciary duties, and/or (c) had knowledge of the other Defendants' breaches and failed to take reasonable steps to remedy them.

65.     Defendants are liable to personally make good to the Plan any losses to the Plan resulting from each breach under 29 U.S.C. § 502(a)(2).

66.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Court should award equitable relief to the Class.


### COUNT II:

### Failure To Disclose (Against the Company and Committee Defendants)

67.     Plaintiff incorporates by reference all preceding paragraphs as if set forth fully herein.

68.     This Count is asserted against Dell and the Committee Defendants.

69.     Defendants had a duty to provide to Participants complete, accurate and material information concerning the problems with Dell's business and financial condition necessary for Participants to make informed decisions concerning the prudence of directing the Plan to invest in the Fund.

Upon information and belief, Dell's filings with the Securities and Exchange Commission alleged above were incorporated by reference in the Plan's SPD or other Plan communications disseminated by Defendants in the exercise of their fiduciary duties to be used by Participants in managing the Plan's investment in the Fund and Plan benefits more generally.

Dell exercised discretion in determining the content of the SEC filings disseminated to Participants as alleged above.

70.     Defendants failed to disclose complete and accurate information as alleged above.

71.     As a consequence of the foregoing negligent nondisclosures and negligent misrepresentations, Defendants also breached their fiduciary duties in that they failed to provide Participants with an adequate description of the risk and return characteristics of the Fund.

72.    As a consequence of the Defendants' breaches, the Plan suffered losses.

73.    Each Defendant is liable for the acts of the other Defendants as a co-fiduciary. Upon information and belief, each Defendant (a) knowingly participated in, or knowingly undertook to conceal the breaches of the other fiduciaries, (b) by virtue of his own breach of fiduciary duty, enabled the other Defendants to breach their fiduciary duties, and/or (c) had knowledge of the other Defendants' breaches and failed to take reasonable steps to remedy them.

74.    Defendants are liable to personally make good to the Plan any losses to the Plan resulting from each breach under 29 U.S.C. § 502(a)(2).

75.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Court should award equitable relief to the Class.

## COUNT III:

### Failure To Appoint and Monitor (Against the Director Defendants)

76.    Plaintiff incorporates by reference all preceding paragraphs as if set forth fully herein.

77.    This Count is asserted against the Director Defendants.

78.    As alleged above, the Director Defendants assumed a duty to appoint and monitor the performance of the Committee.

79.    Under ERISA, a monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment and holding of Plan assets, and must take prompt and effective action to protect the Plan and Participants when they are not.

80.    The monitoring duty further requires that appointing fiduciaries have procedures in place, so that on an ongoing basis they may review and evaluate whether the "hands-on"

fiduciaries are doing an adequate job (for example, by requiring periodic reports on their work and the Plan's performance, and by ensuring that the monitored fiduciaries have an appropriate process for obtaining the information and resources they need). In the absence of a sensible process for monitoring their appointees, the appointing fiduciaries would have no basis for prudently concluding that their appointees were faithfully and effectively performing their obligations to plan participants or for deciding whether to retain or remove them.

81.    Furthermore, a monitoring fiduciary must provide the monitored fiduciaries with complete and accurate information in his/her possession that he/she knows, or reasonably should know, that the monitored fiduciaries must have in order to prudently manage the Plan and Plan assets, or that may have an extreme impact on the Plan and the fiduciaries' investment decisions regarding the Plan.

82.    The Director Defendants breached their fiduciary monitoring duties by, among other things: (a) failing, at least with respect to the Plan's investment in the Fund, to monitor their appointees, to evaluate their performance, or to have any system in place for doing so, and standing idly by as the Plan suffered enormous losses as a result of their appointees' imprudent actions and inaction with respect to company stock; (b) failing to ensure that the monitored fiduciaries appreciated the true extent of the undisclosed material adverse information and the likely impact of such information on the value of the Plan's investment in the Fund; (c) to the extent any appointee lacked such information, failing to provide complete and accurate information to all of their appointees such that they could make sufficiently informed fiduciary decisions with respect to the Plan's assets; and (d) failing to remove appointees whose performance was inadequate in that they continued to make and maintain huge investments in the

Fund, despite their knowledge of misrepresentations and nondisclosures that rendered the Fund an imprudent investment during the Class Period for Participants' retirement savings in the Plan.

83.     As a consequence of the Committee Defendants' breaches of fiduciary duty, the Plan suffered tremendous losses.  If the Director Defendants had discharged their fiduciary monitoring duties as described above, the losses suffered by the Plan would have been minimized or avoided.  Therefore, as a direct and proximate result of the breaches of fiduciary duty alleged herein, the Plan, and indirectly Plaintiffs and the other Class members, lost millions of dollars of retirement savings.

84.     Each Defendant is liable for the acts of the other Defendants as a co-fiduciary. Upon information and belief, each Defendant (a) knowingly participated in, or knowingly undertook to conceal the breaches of the other fiduciaries, (b) by virtue of his own breach of fiduciary duty, enabled the other Defendants to breach their fiduciary duties, and/or (c) had knowledge of the other Defendants' breaches and failed to take reasonable steps to remedy them.

85.     Defendants are liable to personally make good to the Plan any losses to the Plan resulting from each breach under 29 U.S.C. § 502(a)(2).

86.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Court should award equitable relief to the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for:

A.     Determining that the instant action may be maintained as a class action under Rule 23, Federal Rules of Civil Procedure, appointing Plaintiff as class representative and determining that Plaintiff's counsel satisfies the prerequisites of Rule 23(g);

B.      A Declaration that Defendants breached ERISA fiduciary duties owed to the Plan and Participants;

C.      A Declaration that Defendants are not entitled to the protection of ERISA § 404(c)(1)(B), 29 U.S.C. § 1104(c)(1)(B);

D.      An Order compelling Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of their fiduciary duties, including losses to the Plan resulting from imprudent investment of the Plan's assets, and to restore to the Plan all profits Defendants made through use of the Plan's assets, and to restore to the Plan all profits which the Plan would have made if Defendants had fulfilled their fiduciary obligations;

E.      Imposition a Constructive Trust on any amounts by which Defendants were unjustly enriched at the expense of the Plan as the result of breaches of fiduciary duty;

F.      An Order enjoining Defendants from any further violations of their ERISA fiduciary obligations;

G.      Actual damages paid to the Plan in the amount of any losses the Plan suffered;

H.      An Order allocating the Plan's recoveries to the accounts of all Participants who had any portion of their account balances invested in the Fund maintained by the Plan in proportion to the accounts' losses attributable to the decline in the price of the Fund;

I.      An Order awarding costs pursuant to 29 U.S.C. § 1132(g);

J.      An order awarding attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

K.      An Order for equitable restitution and other appropriate equitable monetary relief against Defendants.

**PLAINTIFF, DAVID NORMAN**

Robert A. Izard
**SCHATZ NOBEL IZARD, P.C.**
20 Church Street, Suite 1700
Hartford, CT 06103
Telephone: (860) 493-6292
Facsimile:  (860) 493-6290

Kip B. Shuman
Jeffrey A. Berens
**DYER & SHUMAN, LLP**
801 East 17th Ave.
Denver, CO 80218-1417
Telephone: (303) 861-3003
Facsimile: (303) 830-6290

**BROWN McCARROLL, L.L.P.**
111 Congress Avenue, Suite 1400
Austin, Texas 78701
(512) 472-5456 (Telephone)
(512) 480-5033 (Direct Fax)
twatkins@mailbmc.com
acarrion@mailbmc.com

By:   _____
THOMAS H. WATKINS
State Bar No. 20928900
ALBERT CARRION JR.
State Bar No. 03883100

**Attorneys for Plaintiff and the Class**

24

**RECEIVED**

**SEP 2 5 2006**

CLERK
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY CLERK

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

A06CA758 SS

## I. (a) PLAINTIFFS
David Normal, individually and on behalf of all others similarly situated

## DEFENDANTS
Dell, Inc., Alan G. Lafley, Kevin B. Rollins, Donald J. Carty, Michael S. Dell, Judy C. Lewent, William H. Gray, III, Thomas W. Luce, III, Sallie L. Krawcheck, Klaus S. Luft, Alex J. Mandl, Michael H. Jordan, Michael A. Miles, Samuel A. Nunn, Jr., Morton L. Topfer, Thomas H. Welch, and John Does 1-30

**(b)** County of Residence of First Listed Plaintiff  Multnomah Co., Oregon
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  Williamson County, TX
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Robert A. Izard, Schatz Nobel Izard, P.C., 20 Church Street, Suite 1700, Hartford, CT 06103, 860/493-6292; Kip B. Shuman, Jeffrey A. Berens, Dyer & Shuman, LLP, 801 East 17th Avenue, Denver, CO 80218-1417, 303/861-3003; Thomas H. Watkins, Albert A. Carrion, Brown McCarroll, L.L.P., 111 Congress Avenue, Austin, TX 78701, 512/472-5456

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☒ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
ERISA §502, 29 U.S.C. § 1132
Brief description of cause:
Violations of ERISA §502, 29 U.S.C. § 1132

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions)
JUDGE  Sam Sparks
DOCKET NUMBER  A06-CA-726 SS

DATE
09/25/06

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

ORIGINAL                                387415

AO82
(Rev. 4/90)

**RECEIPT FOR PAYMENT**
**UNITED STATES DISTRICT COURT**
**for the**
**WESTERN DISTRICT OF TEXAS** at _Austin_

RECEIVED FROM _Braun McCarroll LLP_
_111 Congress Ste 1400_
_Austin, TX 78701_

| Fund | | ACCOUNT | AMOUNT |
|------|------|---------|--------|
| 6855XX | Deposit Funds | 086900 | 60 00 |
| 604700 | Registry Funds | 510000 | 190 00 |
| | General and Special Funds | 086900 | 100 00 |
| 508800 | Immigration Fees | | |
| 085000 | Attorney Admission Fees | | |
| 086900 | Filing Fees | TOTAL | 350.00 |
| 322340 | Sale of Publications | Case Number or Other Reference | |
| 322350 | Copy Fees | 1:06 CV-758 | |
| 322360 | Miscellaneous Fees | | |
| 143500 | Interest | | |
| 322380 | Recoveries of Court Costs | | |
| 322386 | Restitution to U.S. Government | _New Case_ | |
| 121000 | Conscience Fund | | |
| 129900 | Gifts | | |
| 504100 | Crime Victims Fund | _David Norman v._ | |
| 613300 | Unclaimed Monies | | |
| 510000 | Civil Filing Fee (½) | _Dell Inc. et al_ | |
| 510100 | Registry Fee | | |

$ Checks and drafts are accepted subject to collection and full credit will only be given when the check or draft has been accepted by the financial institution on which it was drawn. 532606

DATE _9-25-06_ | Cash | Check | M.O. | Credit | DEPUTY CLERK _Arevalo_