FILED

2007 FEB -2 PM 5: 17

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
DEPUTY

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| DAVID NORMAN, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> DELL, INC., DOMINICK DICOSIMO, MICHAEL JORDAN, KLAUS S. LUFT, BRIAN MACDONALD, MICHAEL A. MILES, THOMAS WELCH, <br><br> Defendants. | CASE NO.  A 06-CA-758-SS |
| GERALD S. LEE, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> DELL COMPUTER CORPORATION, DOMINICK DICOSIMO, MICHAEL JORDAN, KLAUS S. LUFT, BRIAN MACDONALD, MICHAEL A. MILES, and THOMAS WELCH, <br><br> Defendants. | CASE NO.  06-CA-00810-SS |

1

| | |
|---|---|
| ANDRE BOWEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DELL COMPUTER CORPORATION, DOMINICK DICOSIMO, MICHAEL JORDAN, KLAUS S. LUFT, BRIAN MACDONALD, MICHAEL A. MILES, and THOMAS WELCH,<br><br>Defendants. | CASE NO. 06-CA-00808-SS |
| ENRIQUE RANGEL, JR., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DELL COMPUTER CORPORATION, DOMINICK DICOSIMO, MICHAEL JORDAN, KLAUS S. LUFT, BRIAN MACDONALD, MICHAEL A. MILES, THOMAS WELCH,<br><br>Defendants. | CASE NO. A 06-CA-790-SS |

## CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE RETIREMENT INCOME ACT OF 1974

### I.    INTRODUCTION

1.    Plaintiffs David Norman, Gerald S. Lee, Andre Bowen, and Enrique Rangel, Jr. (collectively "Plaintiffs") allege the following based upon the investigation of Plaintiffs' counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Dell, Inc. ("Dell" or the "Company"), including the Dell annual reports (Form 10-K), quarterly reports (Form 10-Q), periodic reports (Form 8-K), and the annual reports (Form 11-K) filed on behalf of the Dell, Inc. 401(k) Plan (the "Plan" - formerly known as the Dell Computer

2

Corporation 401(k) Plan); publicly available information concerning the business and financial condition of Dell, including press reports and securities analyst reports; a review of the Forms 5500 filed by the Plan with the Department of Labor; interviews with participants of the Plan; a review of available documents governing the operations of the Plan; and a review of materials provided by counsel for Dell on January 4, 2007. Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## II.      NATURE OF THE ACTION

2.      This is a class action brought on behalf of the Plan pursuant to §§ 502(a)(2) and (a)(3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(2) and (a)(3), against the fiduciaries of the Plan for violations of ERISA.

3.      The Plan is a retirement plan sponsored by Dell.

4.      Plaintiffs' claims arise from the failure of Defendants, who are fiduciaries of the Plan, to act solely in the interest of the participants and beneficiaries of the Plan, and to exercise the required skill, care, prudence and diligence in administering the Plan and the Plan's assets during the period February 13, 2003 to the present (the "Class Period").

5.      Plaintiffs allege that Defendants allowed the heavy, imprudent investment of the Plan's assets in the Dell, Inc. Stock Fund ("Fund" or the "Dell Stock Fund"). Throughout the Class Period, the Fund was comprised primarily of Dell common stock, throughout despite the fact that Defendants clearly knew or, if they had properly discharged their fiduciary obligations, should have known that such investment was imprudent due to, among other things, Dell's failure to disclose its declining sales, market share, and profit margins, and its improper revenue recognition, accrual and reserve accounting practices -- all of which caused Dell's financial statements to be misleading and which artificially inflated the value of shares of Dell stock and the Fund.

3

6. Specifically, Plaintiffs allege in Count I that the Defendants who were responsible for the investment of the Plan's assets breached their fiduciary duties to the Plan and its participants in violation of ERISA by failing to prudently and loyally manage the Plan's investment in the Fund. In Count II, Plaintiffs allege that the Defendants who were responsible for communicating with participants regarding the Plan's assets failed to provide participants with complete and accurate information regarding Dell stock sufficient to advise participants of the true risks of investing their retirement savings in Dell stock. In Count III, Plaintiffs allege that the Defendants, who were responsible for the selection, monitoring, and removal of the Plan's other fiduciaries, failed to properly monitor the performance of their fiduciary appointees, provide them with adequate information, and remove and replace those whose performance was inadequate. And in Count IV, Plaintiffs allege that Defendants are liable as co-fiduciaries for failing to prevent or take appropriate steps to remedy breaches by other fiduciaries of their duties of prudent and loyal management, complete and accurate communication, and adequate monitoring.

7. As more fully explained below, during the Class Period, Defendants imprudently permitted the Plan to hold and acquire millions of dollars in Dell stock through the Fund. Based on publicly available Plan information, it appears that Defendants' breaches have caused the Plan to lose millions of dollars of retirement savings.

8. This action is brought on behalf of the Plan and seeks to recover losses to the Plan for which Defendants are personally liable pursuant to ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109, and 1132(a)(2). In addition, under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek other equitable relief from Defendants, including, without limitation, injunctive relief and, as available under applicable law, constructive trust, restitution, equitable tracing, and other monetary relief.

9.      ERISA §§ 409(a) and 502(a)(2) authorize participants such as Plaintiffs to sue in a representative capacity for losses suffered by the Plan as a result of breaches of fiduciary duty. Pursuant to that authority, Plaintiffs bring this action as a class action under Fed. R. Civ. P. 23 on behalf of all participants and beneficiaries of the Plan whose Plan accounts were invested in the Fund during the Class Period.

10.      In addition, because the information and documents on which Plaintiffs' claims are based are, for the most part, solely in Defendants' possession, certain of Plaintiffs' allegations are based, by necessity, upon information and belief. At such time as Plaintiffs have had the opportunity to conduct discovery, Plaintiffs will, to the extent necessary and appropriate, amend this Complaint or, if required, seek leave to amend to add such other additional facts as are discovered that further support Plaintiffs' claims.

### III.      JURISDICTION AND VENUE

11.      **Subject Matter Jurisdiction.** This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

12.      **Personal Jurisdiction.** ERISA provides for nationwide service of process. ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2). All of the Defendants are either residents of the United States or subject to service in the United States, and this Court therefore has personal jurisdiction over them. This Court also has personal jurisdiction over them pursuant to Fed. R. Civ. P. 4(k)(1)(A) because they would all be subject to the jurisdiction of a court of general jurisdiction in the State of Texas.

13.      **Venue.** Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan is administered in this district, some or all of the fiduciary breaches for which relief is sought occurred in this district, and/or some Defendants reside and/or transact business in this district.

### IV.    PARTIES

**A.    Plaintiffs**

14.    Plaintiff David Norman is a resident of the State of Oregon. During the Class Period, Plaintiff Norman was a participant in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1102(7), and held shares in his retirement account in the Plan.

15.    Plaintiff Gerald S. Lee is a resident of the State of Kentucky. During the Class Period, Plaintiff Lee was a participant in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1102(7), and held shares in his retirement account in the Plan.

16.    Plaintiff Andre Bowen is a resident of the State of Texas. During the Class Period, Plaintiff Bowen was a participant in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1102(7), and held shares in his retirement account in the Plan.

17.    Plaintiff Enrique Rangel, Jr. is a resident of the State of Texas. During the Class Period, Plaintiff Rangel was a participant in the Plan within the meaning of ERISA § 3(7), 29 U.S.C. § 1102(7), and held shares in his retirement account in the Plan.

**B.    Defendants**

18.    All of the Defendants are fiduciaries of the Plan within the meaning of ERISA, as explained in Section VI below.

19.    **Defendant Dell.** Dell is a Delaware corporation with its principal place of business and chief administrative offices located at One Dell Way, Round Rock, Texas. The Company holds itself out as a provider of products and services worldwide that enable customers to build their information technology and Internet infrastructures. Dell offers a broad range of product categories, including desktop computer systems, mobility products, software and peripherals, servers and networking products, enhanced services, and storage products. During calendar year 2005, Dell was the number one supplier of personal computer systems worldwide, as well as in the United States. According to its Form 10-K for fiscal year end 2006, filed with the SEC on March 15, 2006, Dell employs approximately 65,200 employees worldwide. Dell

also offers various financing alternatives, asset management services, and other customer financial services for its business and consumer customers in the United States through Dell Financial Services L.P., a joint venture between Dell and CIT Group, Inc. Dell's common stock is listed on the Nasdaq and trades under the ticker symbol "DELL."

20.     **Director Defendants.** The Dell Board of Directors is the governing body of Dell under its bylaws and applicable Delaware law. A committee of the Board of Directors known as the Compensation Committee had the responsibility to appoint, and in fact did appoint, the members of the Benefits Administration Committee (described below). The members of the Board who were members of the Compensation Committee during the Class Period are the following individuals, who are referred to herein as the "**Director Defendants**":

(a)     **Defendant Michael Jordan ("Jordan")** served as a director of the Company from December 1992 to April 2003 and served as a member of the Compensation Committee during the Class Period;

(b)     **Defendant Klaus S. Luft ("Luft")** served as a director of the Company from March 1995 to the present and served as a member of the Compensation Committee during the Class Period; and

(c)     **Defendant Michael A. Miles ("Miles")** served as a director of the Company from February 1995 to the present, served as a member of the Governance and Nominating Committee and served as chair of the Compensation Committee during the Class Period.

21.     **The Committee and its Members.** According to the Dell Inc. 401(k) Plan document ("Plan document"), Dell established a Benefits Administration Committee (the "Committee", also known as the "BAC") which, as explained in more detail below, had general responsibility for, *inter alia*, the administration and management of the Plan, including investment management and performance. The members of the Committee during the Class

7

Period were **Defendant Thomas Welch ("Welch")**, Vice President, Assistant Secretary and General Counsel for Dell, **Defendant Dominick DiCosimo ("DiCosimo")**, Dell's Vice President for Global Human Resources Operations, and **Defendant Brian MacDonald ("MacDonald")**, the Company's Vice President and Treasurer.   Welch, DiCosimo and MacDonald (collectively, the **"Committee Defendants"**), were senior corporate officers of Dell who knew or should have known the facts alleged herein.

## V.       THE PLAN

### A.     Background

22.     The Plan, sponsored by Dell, is an "employee pension benefit plan," as defined by ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A).   The Plan is a legal entity that can sue and be sued. ERISA § 502(d)(1), 29 U.S.C. § 1132(d)(1).   In a breach of fiduciary duty action such as this, however, the Plan is neither defendant nor plaintiff.   Rather, pursuant to ERISA § 409, 29 U.S.C. § 1109, and the law interpreting it, the relief requested in this action is for the benefit of the Plan and its participants/beneficiaries.

23.     ERISA requires that every employee benefit plan be "established and maintained pursuant to a written instrument." ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1).   During the Class Period, the Plan was established and maintained under the Dell Inc. 401(k) Plan as Amended and Restated Effective January 1, 2003 (Bates Nos. Dell-ERISA-0000083 to Dell-ERISA-0000160), and amendments dated March 3, 2005 (Bates Nos. Dell-ERISA-0000161 to Dell-ERISA-165), November 29, 2005 (Bates Nos. Dell-ERISA-0000166), and December 12, 2006 (Bates Nos. Dell-ERISA-0000167 to Dell-ERISA-0000175) (attached hereto as Exhibits A – D, respectively).

24.     The assets of an employee benefit plan, such as the Plan here, must be "held in trust by one or more trustees." ERISA § 403(a), 29 U.S.C. § 1103(a). During the Class Period, the assets of the Plan were held in a trust by JPMorgan Chase Bank, N.A. ("JPMorgan Chase"),

pursuant to the Trust Agreement between Dell Computer Corporation and The Chase Manhattan Bank, N.A., effective April 1, 1996 (Bates Nos. Dell-ERISA-0000176 to Dell-ERISA-0000204), and amendments dated December 22, 2000 (Bates Nos. Dell-ERISA-0000205 to Dell-ERISA-0000211), January 1, 2001 (Bates Nos. Dell-ERISA-0000212 to Dell-ERISA-0000224), and January 1, 2004 (Bates Nos. Dell-ERISA-0000225 to Dell ERISA-0000226) (the "Trust Agreement") (attached hereto as Exhibits E – H, respectively).

25.    ERISA requires that every participant in an employee benefit plan be given a Summary Plan Description ("SPD"). The SPD currently in force for the Plan is the Dell Inc. 401(k) Plan Summary Plan Description & Prospectus Effective January 1, 2007 (the "2007 SPD") (Bates Nos. Dell-ERISA-0000341 to Dell-ERISA-0000368); its predecessors are the Dell Inc. 401(k) Plan Summary Plan Description & Prospectus Published 2005 (the "2005 SPD") (Bates Nos. Dell-ERISA-0000311 to Bates Nos. Dell-ERISA-0000340), the Dell Inc. 401(k) Plan Summary Plan Description & Prospectus Published 2004 (the "2004 SPD") (Bates Nos. Dell-ERISA-0000269 to Dell-ERISA-0000310), and the Dell Inc. 401(k) Plan Summary Plan Description & Prospectus Published 2003 (the "2003 SPD") (Bates Nos. Dell-ERISA-0000227 to Dell-ERISA-0000268). The 2007, 2005, 2004 and 2003 SPDs are attached hereto as Exhibits I – L, respectively.

**B.    Employee and Employer Contributions**

26.    At all relevant times, the Plan had two separate components: (1) a contributory component, that consisted of participant contributions, and (2) a matching component, that consisted entirely of employer contributions.

27.    Under the Plan, eligible participants were permitted to make "Salary Reduction Contributions" up to 25% of their "Considered Compensation." Ex. A, Plan document § 3.1. One of the available investment options was the Dell Inc. Stock Fund.

9

28.     In addition to the Salary Reduction Contributions, the Company made three types of contributions to the Plan: (1) the "Employer Matching Contributions," (2) the "Employer Retirement Savings Contributions," and (3) the "Employer Fail Safe Contributions." *Id.* §§ 3.2-3.4.

29.     Under the Plan, until January 1, 2005, Dell provided Employer Matching Contributions of 100% of a participant's Salary Reduction Contributions that were not in excess of 3% of a participant's Considered Compensation and Bonus. *Id.* § 3.2.[1]

30.     Dell also provided Employer Retirement Savings Contributions. This type of contribution was made annually at Dell's discretion in amounts determined by Dell at its discretion. *Id.* § 3.3.

31.     Additionally, Dell provided Employer Fail Safe Contributions. This type of contribution was made at Dell's discretion in amounts necessary to cause the Dell Plan to satisfy Internal Revenue Service regulations. *Id.* § 3.4.

32.     The employee and company contributions were held in either the participant's Salary Reduction Contribution Account or the Employer Contribution Account. *Id.* § 4.2.

C.     **The Fund**

33.     The Fund holds the Plan's shares of Dell stock.

34.     Participants could cause the Plan to invest the assets held in each of their accounts among a number of investment funds offered by the Plan. Ex. A, Plan document § 5.1. One of the Investment Funds which participants could select was the Fund, though as alleged below, during the Class Period, participants were not provided with complete and accurate information regarding Dell Stock as required by ERISA.

---

[1] Effective January 1, 2005, the Dell Plan was amended and the Employer Matching Contribution was replaced with "Safe Harbor Matching Contributions." The Safe Harbor Matching Contributions provided matching contributions equal to 100% of the Salary Reduction Contributions that were not in excess of 4% of a participant's Considered Compensation. *See* Ex. B, Amendment No. One to the Dell Inc. 401(k) Plan. Safe Harbor Matching Contributions are 100% vested and non-forfeitable at all times. *Id.*

35.     During the Class Period, the Dell Stock fund represented as much as 47% of the Plan's net assets, as illustrated below:

| Plan FY Ending | Net Assets of Plan | Dell Inc. Stock Fund Value | Percentage of Plan Assets in Stock |
|---|---|---|---|
| 2003 | $1,312,650,000 | $618,786,000 | 47.14% |
| 2004 | $1,571,257,000 | $653,421,000 | 41.59% |
| 2005 | $1,560,191,000 | $453,330,000 | 29.06% |

2003 Dell Inc. 401(k) Plan Form 11-K at 2 and 8; 2004 Dell Inc. 401(k) Plan Form 11-K at 2 and 9; 2005 Dell Inc. 401(k) Plan Form 11-K at 2 and 8.

36.     According to the Plan document, the fiduciaries of the plan had a duty to "diversify[] the investments of the Plan so as to minimize the risk of large losses....". Ex. A, Plan document § 12.3(c). The Plan's investment in the Dell Stock Fund was not exempted from this diversification duty by any provision of the Plan.

37.     Additionally, pursuant to the Plan document and ERISA, the fiduciaries of the Plan had a duty to act loyally, prudently, and for the exclusive purpose of providing benefits to Plan participants. *Id.* at § 12.3(a) & (b); ERISA § 104(a).

## VI.     DEFENDANTS' FIDUCIARY STATUS

### A.     The Nature of Fiduciary Status

38.     **Named Fiduciaries.** Every plan must have one or more "named fiduciaries." ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1). The person named as the "administrator" in the plan instrument is automatically a named fiduciary, and in the absence of such a designation, the sponsor is the administrator. ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

39.     **De Facto Fiduciaries.** ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under § 402(a)(1), 29 U.S.C. § 1102(a)(1), but also any other persons who in fact perform fiduciary functions. Thus, a person is a fiduciary to the extent "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or

11

exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i).

40.    Each of the Defendants was a fiduciary with respect to the Plan and owed fiduciary duties to the Plan and the participants under ERISA in the manner and to the extent set forth in the Plan's documents, through their conduct, and under ERISA.

41.    As fiduciaries, Defendants were required by ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), to manage and administer the Plan and the Plan's investments solely in the interest of the Plan's participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

42.    Plaintiffs do not allege that each Defendant was a fiduciary with respect to all aspects of the Plan's management and administration. Rather, as set forth below, Defendants were fiduciaries to the extent of the specific fiduciary discretion and authority assigned to or exercised by each of them, and, as further set forth below, the claims against each Defendant are based on such specific discretion and authority.

43.    Instead of delegating all fiduciary responsibility for the Plan to external service providers, Dell chose to assign the appointment and removal of fiduciaries to its Board of Directors. These persons in turn selected Dell employees, officers, and agents to perform most relevant fiduciary functions. Although the Plan had an institutional trustee unrelated to Dell, the Trust Agreement required the trustee to take directions from Dell personnel.

44.    ERISA permits fiduciary functions to be delegated to insiders without an automatic violation of the rules against prohibited transactions, ERISA § 408(c)(3), 29 U.S.C.

12

§ 1108(c)(3). But insider fiduciaries, like external fiduciaries, must act solely in the interest of participants and beneficiaries, not in the interest of the Plan sponsor.

**B.    The Company**

45.    Pursuant to the Plan document, during the Class Period, Dell served as the "Plan Administrator" as that term is defined under ERISA. Ex. A, Plan document § 10.1; *see also id.* ("The general administration of the Plan shall be vested in the Company.").

46.    Additionally, pursuant to the Plan document, during the Class Period, Dell was to supply "full and timely information to the Committee...." *Id.* § 10.8; *see also id.* § 10.7(i).

47.    Moreover, pursuant to Article V of the Plan document, the Trustee was not to purchase Dell stock "during any period in which such purchase is, in the opinion of counsel for the Company or the Committee, restricted by any law or regulation applicable thereto." *Id.* § 5.2.

48.    Further, pursuant to Section XII of the Plan document, the Company and the other fiduciaries of the Plan had the duty and responsibility with respect to the Plan to act:

> (a) *Solely in the interest of the Participants, for the exclusive purpose of providing benefits to Participants and their beneficiaries* and of defraying reasonable expenses of administering the Plan and Trust;
>
> (b) *With the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use* in the conduct of an enterprise of a like character and with like aims;
>
> (c) *By diversifying the investments of the Plan so as to minimize the risk of large losses*, unless under the circumstances it is prudent not to do so; and
>
> (d) In accordance with the documents and instruments governing the Plan insofar as such documents and instruments are consistent with applicable law.

*Id.* § 12.3 (emphasis added).

49.    Dell, at all applicable times, exercised control over the activities of its officers and employees that performed fiduciary functions with respect to the Plan, including the Committee,

13

and could hire, terminate, and replace such employees at will. Moreover, Dell employees, and, in particular, employees with Human Resources, Corporate Communication, Treasury and Legal Departments, administered the Plan as part of their day-to-day duties in the regular course of their employment. Dell is, thus, responsible for the activities of its officers and employees through principles of agency and *respondeat superior* liability.

50.    Finally, as a matter of corporate law, Dell is imputed with the knowledge that the other Defendants had of the misconduct alleged herein, even if not communicated to Dell.

51.    Consequently, in light of the foregoing duties, responsibilities, and actions, Dell was both a named fiduciary of the Plan pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), and a *de facto* fiduciary within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that it exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

## C.    The Director Defendants

52.    Pursuant to the Plan document, during the Class Period, the Board of Directors had the responsibility to appoint, remove, and, hence, monitor the Committee Defendants as well as the Trustee. *Id.* §§ 10.1, 10.2, 11.1, 12.2. On information and belief, the Board of Directors delegated these duties to the members of its Compensation Committee. Accordingly, at present, Plaintiffs name only the specific Directors who served on the Compensation Committee during the Class Period.

53.    Additionally, under Delaware law and Dell's bylaws, the Dell Board of Directors had the authority to manage the business and affairs of Dell. Because Dell was, as alleged above, a fiduciary of the Plan during the Class Period, so, necessarily, were the Director Defendants, who, as members of the Board, had the ultimate authority for Dell's affairs, and through whom the company acted with respect to its Plan-related responsibilities.

54.     Consequently, in light of the foregoing duties, responsibilities, and actions, the Director Defendants, as members of the Board of Directors and its Compensation Committee with specific Plan-related duties assigned to them, were both named fiduciaries of the Plan pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), and *de facto* fiduciaries within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21). They exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan, through their authority to appoint and remove members of the Committee.

## D.     The Committee Defendants

55.     Pursuant to the Plan document, during the Class Period the Committee served as the "named fiduciary" of the Plan as that term is defined under ERISA. *Id.* § 10.1.

56.     Pursuant to the Plan document, during the Class Period the Committee "shall supervise the administration and enforcement of the Plan...and shall have all powers necessary to accomplish these purposes...." *Id.* § 10.7.

57.     Pursuant to the Plan document, during the Class Period the Committee's duties included, but were not limited to:

* * *

(g) To prepare, file, and distribute, in such manner as the Committee determines to be appropriate, such information and material as is required by the reporting and disclosure requirements of ERISA;

* * *

(k) To instruct the Trustee as to the management, investment, and reinvestment of the Trust Agreement;

(l)   To appoint investment managers;

(m) To receive and review reports from the Trustee and from investment managers as to the financial condition of the Trust Fund...;

(n) To review periodically the Plan's short-term and long-term investment needs and goals and to communicate such needs and goals to the Trustee

15

and any investment manager as frequently as the Committee, in its discretion, deems necessary for the proper administration of the Plan and Trust;

(o) To establish or designate Investment Funds as investment options under the Plan as provided in Article V...;

\* \* \*

(q) To direct the Trustee as to the exercise of rights or privileges to acquire, convert, or exchange Company Stock pursuant to Article V....

*Id.* § 10.7.

58.    Moreover, pursuant to Article V of the Plan document, the Trustee was not to purchase Dell stock "during any period in which such purchase is, in the opinion of counsel for the Company or the Committee, restricted by any law or regulation applicable thereto." *Id.* § 5.2.

59.    Further, pursuant to Section XII of the Plan document, the Committee, and the other fiduciaries of the Plan, had the duty and responsibility with respect to the Plan to act:

(a) *Solely in the interest of the Participants, for the exclusive purpose of providing benefits to Participants and their beneficiaries* and of defraying reasonable expenses of administering the Plan and Trust;

(b) *With the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use* in the conduct of an enterprise of a like character and with like aims;

(c) *By diversifying the investments of the Plan so as to minimize the risk of large losses*, unless under the circumstances it is prudent not to do so; and

(d) In accordance with the documents and instruments governing the Plan insofar as such documents and instruments are consistent with applicable law.

*Id.* § 12.3 (emphasis added).

60.    Consequently, in light of the foregoing duties, responsibilities, and actions, the Committee Defendants were both named fiduciaries of the Plan pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), and *de facto* fiduciaries within the meaning of ERISA § 3(21), 29 U.S.C.

16

§ 1002(21), in that they exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority or control respecting management or disposition of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

## VII.  FACTS BEARING ON FIDUCIARY BREACH

61.  ERISA mandates that plan fiduciaries have a duty of loyalty to the plan and its participants, which includes the duty to speak truthfully to the plan and its participants when communicating with them. A fiduciary's duty of loyalty to plan participants under ERISA includes an obligation not to materially mislead, or knowingly allow others to materially mislead, plan participants and beneficiaries.

62.  During the Class Period, upon information and belief, Defendants made direct and indirect communications with participants in the Plan to be used by participants in managing the investment of their Plan accounts in the Fund which included statements regarding investments in Company stock.  These communications included, but were not limited to, SEC filings, annual reports, press releases, and Plan documents in which Defendants failed to provide complete and accurate information regarding Dell's financial circumstances and to disclose that Company stock was not a prudent retirement investment and the facts relating thereto.

63.  Further, as the Plan's fiduciaries, Defendants knew or should have known certain basic facts about the characteristics and behavior of the Plan's participants, well-recognized in the 401(k) literature and the trade press, concerning investment in company stock, including that:

    (a)    Employees tend to interpret a match offered in company stock as an endorsement of the company and its stock;

    (b)    Out of loyalty, employees tend to invest in company stock;

    (c)    Employees tend to over-extrapolate from recent returns, expecting high returns to continue or increase going forward;

(d)    Employees tend not to change their investment option allocations in the plan once made;

(e)    No qualified retirement professional would advise rank and file employees to invest more than a modest amount of retirement savings in company stock, and many retirement professionals would advise employees to avoid investment in company stock entirely;

(f)    Lower income employees tend to invest more heavily in company stock than more affluent workers, though they are at greater risk; and

(g)    Even for risk-tolerant investors, the risks inherent to company stock are not commensurate with its rewards.

64.    Even though Defendants knew or should have known these facts, and even though Defendants knew of the high concentration of the Plan's funds in Company stock during the Class Period, Defendants failed to take any meaningful ameliorative action to protect the Plan and its participants from their heavy investment in an imprudent retirement vehicle, the Fund. This was particularly inappropriate under the circumstances of this case because the Plan document required the Plan fiduciaries to diversify the investments of the Plan so as to minimize the risk of large losses.

## A.    Dell's Stock Was an Imprudent Investment for the Plan during the Class Period

### 1.    Background

65.    During the Class Period, Dell was plagued by a number of problems that made it imprudent for the Plan's fiduciaries to permit the Plan to offer the Fund as an investment option and permit the Plan to invest in the Fund. More specifically, Dell stock posed an unduly large risk of significant loss, and this risk is not one that can be prudently borne by a 401(k) plan for employees, even if the stock is properly priced by the market.

18

66.     While certain types of investors and certain types of portfolios could perhaps prudently hold Dell stock notwithstanding the large risk of significant losses, the Plan could not. The Plan is designed to provide for retirement savings for ordinary employees.  Given their purpose of providing a significant part of participants' retirement income, 401(k) plans such as the Dell Plan cannot be true to that purpose if they bear large risks of significant losses; put differently, 401(k) plans simply cannot afford significant losses, and, therefore, the risk of such losses must be kept low.

67.     Although a fiduciary's duty of prudence does not include a general duty to diversify with respect to qualified employer securities, here, the Plan document specifically states that the fiduciaries of the Plan had a duty to "diversify[] the investments of the Plan so as to minimize the risk of large losses....".  Plan document § 12.3(c).  Moreover, the Plan documents and ERISA required the Defendants to act loyally, prudently, and for the exclusive purpose of providing benefits to plan participants.  *Id.* § 12.3(a) & (b); ERISA § 104(a).  Thus, Defendants could not ignore circumstances, such as those here, which increased the Plan's beneficiaries' risk of loss to an unacceptable level.

68.     The risk of large losses was exacerbated by the fact that Dell stock constituted a high percentage of the Plan's investment options—representing as much as 47% of the Plan's assets during the Class Period.

2.      **Dell's Undisclosed Improper Business Practices Made Dell Stock Imprudent as an Investment for the Plan**

69.     Dell specializes in the development, manufacture and sale of computers and information technology products, including desktop computer systems, mobility products (notebook computer systems), software and peripherals, servers and networking products, enhanced services and storage products.  During calendar 2005, Dell was the number one supplier of personal computer systems in the United States and worldwide.

19

70. During the Class Period until August 17, 2006, Dell consistently represented that it posted industry-leading results, unit volume growth substantially exceeding industry norms, substantial growth in all regional and product markets and double-digit year-over-year revenue growth. Dell consistently made these statements in its Forms 8-K filed with the SEC on, for example, May 13, 2003, August 14, 2003, November 13, 2003, February 12, 2004, May 13, 2004, August 12, 2004, November 15, 2004, February 10, 2005, May 12, 2005, August 11, 2005, October 31, 2005, February 16, 2006, March 23, 2006 and May 18, 2006.

71. In fact, by early 2003, on information and belief, Dell was experiencing a significant decline in its profit margins, sales and market share as a result of heightened competition and an increase in its cost of sales. Nonetheless, Dell did not accurately reveal the true nature of its declining business. Rather, Dell's financial statements which were set forth in SEC filings were false or misleading because the Company's reported profit and revenue growth was inflated by utilizing improper accounting practices, including the inappropriate recognition of revenue and the misstatement of accruals and reserves on the balance sheet.

72. On information and belief, one of the improper accounting practices employed by Dell throughout the Class Period for the purpose of showing improving earnings and profit margins was to under-accrue for standard warranty costs and thus overstate earnings per share and gross profit margins. Dell normally masked this practice by failing to report its accruals for standard warranty costs separately from its accruals for extended warranty costs.

73. On information and belief, Dell also masked unfavorable inventory accumulation trends during the Class Period by failing to include products which had been ordered but not yet delivered as part of its inventory, including them instead as an undifferentiated part of "other current assets."

74. On August 14, 2006, Dell announced a massive recall for batteries in laptop computers it sold between April 1, 2004 and July 18, 2006. The estimated cost of the recall was

between $200 and $400 million. On information and belief, Defendants had knowledge of the significant problems with these products substantially before announcing the recall, as a result Dell's recall of many of the same batteries sold in the Canadian market in December of 2005. However, Dell failed to disclose problems with these batteries in a timely fashion or the projected impact of these problems on its financial performance.

75.    In its 8-K filed on August 17, 2006, Dell announced that second quarter net income had dropped 51%. More importantly, Dell revealed that the SEC had begun investigating its revenue recognition practices and other accounting and financial reporting. The August 17, 2006 press release attached to the Form 8-K provides in relevant part:

> The SEC has requested information relating to revenue recognition and other accounting and financial reporting matters for certain past fiscal years, and Dell has been cooperating. In the course of responding to the requests, the company recently discovered information that raises potential issues relating to certain periods prior to fiscal 2006.

76.    On September 11, 2006, Dell filed a disclosure on Form 8-K in which it announced that it would delay the filing of its Form 10-Q as a result of "questions raised in connection with the SEC's investigation into Dell's accounting practice." Dell also indicated that it had been served with a subpoena for documents by the U.S. Attorney for the Southern District of New York. The press release attached to the Form 8-K provided in relevant part:

> DELL WILL DELAY FILING OF FORM 10-Q
>
> . . . Dell Inc. announced today that it is delaying the filing of the Form 10-Q for its fiscal second quarter ended August 4, 2006.
>
> The company said it is unable to file because of questions raised in connection with the previously announced informal investigation by the U.S. Securities and Exchange Commission (SEC) into certain accounting and financial reporting matters and the subsequently initiated independent investigation by the Audit Committee of its board of directors.
>
> The investigations have indicated the possibility of misstatements in prior period financial reports, including issues relating to accruals, reserves and other balance sheet items that may affect the company's previously reported financial results. The company is working with the Audit Committee and with the company's independent auditors to

determine if any restatements of prior period financial reports will be necessary.

The SEC requests for information have been joined by a similar request from the United States Attorney for the Southern District of New York, who has subpoenaed documents related to the company's financial reporting from 2002 to the present.

77.    As a result of Dell's September 11 announcement, Standard & Poor's Ratings Service placed Dell's corporate credit rating, senior unsecured rating and short-term rating on a CreditWatch with negative implications.

78.    On September 15, 2006, Dell received a NASDAQ Staff Determination Letter indicating that the Company was not in compliance with NASDAQ's requirements for continued listing on the exchange by virtue of the Company's failure to timely file its quarterly report and could be de-listed from NASDAQ. On November 2, 2006, the Company appeared before the NASDAQ Listing Qualifications Panel to present a plan for regaining compliance and to request continued listing on the NASDAQ Stock Market.

79.    On or about November 16, 2006, Dell announced that the SEC entered a formal order of investigation concerning the Company's accounting and financial reporting practices and postponed the release of its third quarter earnings report.

80.    On or about November 21, 2006, Dell announced results for the third quarter, but indicated that the results had to be considered "preliminary":

Due to questions raised in connection with these ongoing investigations [by the SEC, the U.S. Attorney for the Southern District of New York, and the Company's own Audit Committee], the Company has not filed the Form 10-Q for its fiscal second quarter ended August 4, 2006 and does not expect to be able to timely file its Form 10-Q for the fiscal third quarter ended November 3, 2006. As a result, all financial results described in this press release, as well as the previously announced financial results for the second quarter, should be considered preliminary, and are subject to change to reflect any necessary corrections or adjustments, or changes in accounting estimates, that are identified prior to the time the company is in a position to complete these filings. In addition, the preliminary results for the second and third quarters could be affected by any restatements of prior period financial statements that are

22

required as a result of any conclusions reached by the investigations. No determination has been made as to whether restatements of prior period financial statements will be required.

The company is not currently able to predict the extent or significance of any such changes, and those changes could materially affect the preliminary results reported herein, as well as the previously announced results for the second quarter.

81.     On or about December 15, 2006, Dell announced that, "[d]ue to questions raised in connection with these ongoing investigations [by the SEC, the U.S. Attorney for the Southern District of New York, and the Company's own Audit Committee] the company is unable to file the Q3 Form 10-Q." The announcement further indicated that the Company "is not currently able to predict the extent or significance of any such changes [to its prior financial reports], and those changes could materially affect previously announced results."

82.     On January 31, 2007, after the market had closed, Dell announced that Kevin Rollins had resigned his positions as Chief Executive Officer and member of the Board of Directors, and that Michael Dell would assume Mr. Rollins CEO responsibilities. The Company also said that it expected its fourth quarter Fiscal Year 2007 results to be below the average of First Call Estimates for both revenue and earnings per share. Upon these disclosures, Dell shares were halted in after-hours trading. Dell's press release did not reveal why Mr. Rollins had suddenly resigned.

### 3.     Defendants Knew or Should Have Known That Dell Stock Was an Imprudent Investment

83.     During the Class Period, as described herein, Defendants knew or, had they properly discharged their fiduciary obligations, would have known that the Fund stocks and Dell stock were imprudent investment alternatives for the Plan due to the fact that Dell: (a) lacked appropriate internal controls to ensure the accuracy of its financial reporting and the estimates of its future financial performance to such an extent that it could not meet its disclosure obligations under the securities laws; (b) was improperly recognizing revenue; (c) admittedly failed to

23

disclose material financial information necessary to determine whether the Company Stock Fund and Dell Stock were prudent investments; (d) was misstating accruals and reserves on its balance sheet; (e) was suffering a severe decline in market share; (f) was suffering from a significant decrease in profit margins; (g) was failing in its effort to expand into other business areas including printers, consumer electronics, data storage and networking; and (h) had failed to timely disclose the battery recall or its financial impact. As a result of these undisclosed facts, Dell's stock price and the price of the Fund were artificially inflated making them an imprudent investment for Dell's retirement Plan.

84.    As a result of Defendants' knowledge of the public misconceptions concerning the true financial health of the Company, any generalized warnings of market and diversification risks that Defendants made to the Plan's participants regarding the Plan's investment in Dell stock did not effectively inform the Plan's participants of the past, immediate, and future dangers of investing in Company stock.

85.    Defendants also failed to take into account the changing risk profile of the Dell stock investment as a result of the above circumstances and the Company's deteriorating financial circumstances as demonstrated by, among other objective indicators, Dell's debt/equity ratio.

86.    The Committee Defendants failed to conduct an appropriate investigation into whether Dell stock was a prudent investment for the Plan and, in connection therewith, failed to provide the Plan's participants with information regarding Dell's tremendous problems so that participants could make informed decisions regarding their investments in Dell stock in the Plan.

87.    An adequate or even cursory investigation by Defendants would have revealed to a reasonable fiduciary that, under these circumstances, investment by the Plan in Dell stock was clearly imprudent. A prudent fiduciary acting under similar circumstances would have acted to protect participants against unnecessary losses and would have made different investment decisions.

88.     Because Defendants knew or should have known that Dell was not a prudent investment option for the Plan, they had a fiduciary duty to protect the Plan and its participants from unreasonable and entirely predictable losses incurred as a result of the Plan's investment in Dell stock.

89.     Defendants had available to them several different options for satisfying this duty, including: making appropriate public disclosures, as necessary; divesting the Plan of Dell stock; discontinuing further contributions to and/or investment in Dell stock under the Plan; consulting independent fiduciaries regarding appropriate measures to take in order to prudently and loyally serve the participants of the Plan; and/or resigning as fiduciaries of the Plan to the extent that as a result of their employment by Dell they could not loyally serve the Plan and its participants in connection with the Plan's acquisition and holding of Dell stock.

90.     Despite the availability of these and other options, Defendants failed to take any action to protect participants from losses resulting from the Plan's investment in Dell stock. In fact, Defendants continued to invest and to allow investment of the Plan's assets in Company stock even as Dell's problems came to light.

91.     In addition, the Defendants failed to adequately review the performance of the other fiduciaries of the Plan to ensure that they were fulfilling their fiduciary duties under the Plan and ERISA.

92.     Upon information and belief, the Company regularly communicated with employees, including participants in the Plan, about the performance and future financial and business prospects of the Company's common stock, which was, far and away, the single largest asset of the Plan. During the Class Period, upon information and belief, the Company fostered a positive attitude toward Company stock and/or allowed participants in the Plan to follow their natural bias towards investment in the equities of their employer by not disclosing negative material information concerning investment in Company stock. Moreover, Defendants failed to disclose the undisclosed material adverse information alleged above. As such, participants in the Plan could not appreciate the true risks

presented by investments in Company stock and, therefore, could not make informed decisions regarding their investments in Company stock in the Plan.

## VIII.    THE RELEVANT LAW

93.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), provides, in pertinent part, that a civil action may be brought by a participant for relief under ERISA § 409, 29 U.S.C. § 1109.

94.    ERISA § 409(a), 29 U.S.C. § 1109(a), "Liability for Breach of Fiduciary Duty," provides, in pertinent part, that "any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

95.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes individual participants to seek equitable relief from defendants, including, without limitation, injunctive relief and, as available under applicable law, constructive trust, restitution, and other monetary relief.

96.    ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B), provides, in pertinent part, that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries, for the exclusive purpose of providing benefits to participants and their beneficiaries, and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

97.    These fiduciary duties under ERISA §§ 404(a)(1)(A) and (B) are referred to as the duties of loyalty, exclusive purpose, and prudence and are the "highest known to the law." They entail, among other things:

26

(a)    The duty to conduct an independent and thorough investigation into, and to continually monitor, the merits of all the investment alternatives of a plan, including in this instance the Dell Fund, which invested in Dell stock, to ensure that each investment is a suitable option for the plan;

(b)    The duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor; and

(c)    The duty to disclose and inform, which encompasses: (1) a negative duty not to misinform; (2) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and (3) a duty to convey complete and accurate information material to the circumstances of participants and beneficiaries.

98.    ERISA § 405(a), 29 U.S.C. § 1105(a), "Liability for Breach by Co-Fiduciary," provides, in pertinent part, that:

> In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
>
> (2) if, by his failure to comply with section 404(a)(1), 29 U.S.C. § 1104(a)(1), in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

99.    Co-fiduciary liability is an important part of ERISA's regulation of fiduciary responsibility. Because ERISA permits the fractionalization of the fiduciary duty, there may be,

27

as in this case, several ERISA fiduciaries involved in a given issue, such as the role of company stock in a plan. In the absence of co-fiduciary liability, fiduciaries would be incentivized to limit their responsibilities as much as possible and to ignore the conduct of other fiduciaries. The result would be a setting in which a major fiduciary breach could occur, but the responsible party could not easily be identified. Co-fiduciary liability obviates this. Even if a fiduciary merely knows of a breach, a breach he had no connection with, he must take steps to remedy it:

> [I]f a fiduciary knows that another fiduciary of the plan has committed a breach, and the first fiduciary knows that this is a breach, the first fiduciary must take reasonable steps under the circumstances to remedy the breach. . . . [T]he most appropriate steps in the circumstances may be to notify the plan sponsor of the breach, or to proceed to an appropriate Federal court for instructions, or bring the matter to the attention of the Secretary of Labor. The proper remedy is to be determined by the facts and circumstances of the particular case, and it may be affected by the relationship of the fiduciary to the plan and to the co-fiduciary, the duties and responsibilities of the fiduciary in question, and the nature of the breach.

1974 U.S.C.C.A.N. 5038, 1974 WL 11542, at 5080.

100. Plaintiffs therefore bring this action under the authority of ERISA § 502(a)(2) for relief under ERISA § 409(a) to recover losses sustained by the Plan arising out of the breaches of fiduciary duties by the Defendants for violations under ERISA § 404(a)(1) and ERISA § 405(a).

## IX.    ERISA § 404(c) DEFENSE DOES NOT APPLY

101. ERISA § 404(c) is an affirmative defense that provides a limited exception to fiduciary liability for losses that result from participants' exercise of control over investment decisions. In order for § 404(c) to apply, participants must in fact exercise "independent control" over investment decisions, and the fiduciaries must otherwise satisfy the numerous procedural and substantive requirements of ERISA § 404(c), 29 U.S.C. § 1104(c), and the regulations promulgated under it.

102. ERISA § 404(c) does not apply here for several reasons.

28

103.   First, during at least part of the Class Period, on information and belief, the Plan did not purport to be a § 404(c) Plan. *See* 29 C.F.R. § 2550.404c-1(b)(2)(i)(B)(1)(i) (participant must be provided with "[a]n explanation that the plan is intended to constitute a plan described in section 404(c) of [ERISA] and title 29 of the Code of Federal Regulations, § 2550.440c-1, and that the fiduciaries of the plan may be relieved of liability for any losses which are the direct and necessary result of investment instructions given by such participant or beneficiary").

104.   Second, ERISA § 404(c) does not and cannot provide any defense to the fiduciaries' imprudent decision to select and continue offering Dell stock as an investment option in the Plan, as this is not a decision that was made or controlled by the participants. *See* Final Reg. Regarding Participant Directed Individual Account Plan (ERISA Section 404(c) Plans) ("Final 404(c) Reg."), 57 Fed. Reg. 46906-01, 1992 WL 277875, at *46924 n.27 (Oct. 13, 1992) (codified at 29 C.F.R. pt. 2550) (noting that "the act of limiting or designating investment options which are intended to constitute all or part of the investment universe of an ERISA § 404(c) plan is a fiduciary function which, whether achieved through fiduciary designation or express plan language, is not a direct or necessary result of any participant direction of such plan").

105.   Third, even as to participant-directed investment in the Fund, ERISA § 404(c) does not apply because Defendants failed to ensure effective participant control by providing complete and accurate material information to participants regarding Dell stock. Where information that participants of the Plan would find relevant to make his/her decision has been withheld, falsely reported, and/or not fully disclosed, § 404(c) does not apply. *See* 29 C.F.R. § 2550.404c-1(b)(2)(i)(B) (the participant must be provided with "sufficient information to make informed decisions"). As a consequence, participants in the Plan did not have informed control over the portion of the Plan's assets that were invested in Dell stock as a result of their

investment directions, and the Defendants remain entirely responsible for losses that result from such investment.

106.   Because ERISA § 404(c) does not apply here, the Defendants' liability to the Plan, the Plaintiffs, and the Class (as defined below) for losses caused by the Plan's investment in the Fund is established upon proof that such investments were or became imprudent and resulted in losses in the value of the assets in the Plan during the Class Period.

## X.   CAUSES OF ACTION

**A.   Count I: Failure to Prudently and Loyally Manage the Plan and Assets of the Plan**

107.   Plaintiffs incorporate by reference the paragraphs above.

108.   This Count alleges fiduciary breach against Defendant Dell and the Committee Defendants (the "Prudence Defendants").

109.   As alleged above, during the Class Period the Prudence Defendants were named fiduciaries pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), or *de facto* fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), or both.  Thus, they were bound by the duties of loyalty, exclusive purpose, and prudence.

110.   As alleged above, the scope of the fiduciary duties and responsibilities of the Prudence Defendants included managing the assets of the Plan for the sole and exclusive benefit of Plan participants and beneficiaries and with the care, skill, diligence, and prudence required by ERISA.   The Prudence Defendants were directly responsible for, among other things, selecting prudent investment options, eliminating imprudent options, determining how to invest employer contributions to the Plan and directing the trustee regarding the same, evaluating the merits of the Plan's investments on an ongoing basis, and taking all necessary steps to ensure that the Plan's assets were invested prudently.

111.   Yet, contrary to their duties and obligations under the Plan documents and ERISA, the Prudence Defendants failed to loyally and prudently manage the assets of the Plan.

Specifically, during the Class Period, these Defendants knew or should have known that the Fund was no longer a suitable and appropriate investment for the Plan, but was, instead, an imprudent investment in light of the Company's material undisclosed fundamental weaknesses. Nonetheless, during the Class Period, these Defendants continued to permit the Plan to offer the Fund as an investment option for participant and employer contributions and continued to permit the Plan to invest those contributions in the Fund. They did so despite the fact that they knew or should have known that the Company was experiencing undisclosed declining sales, market share, and profit margins, and while the Company engaged in undisclosed improper revenue recognition and accrual and reserve accounting practices.

112. The Prudence Defendants were obliged to prudently and loyally manage all of the Plan's assets. However, their duties of prudence and loyalty were especially significant with respect to Company stock because: (a) company stock is a particularly risky and volatile investment, even in the absence of company misconduct; and (b) participants tend to underestimate the likely risk and overestimate the likely return of investment in company stock.

113. The Prudence Defendants had a duty to follow a regular, appropriate systematic procedure to evaluate the prudence of investing in the Fund, but had no such procedure. Moreover, they failed to conduct an appropriate investigation of the merits of continued investment in the Fund. Such an investigation would have revealed to a reasonably prudent fiduciary the imprudence of continuing to make and maintain investment in the Fund under these circumstances.

114. The Prudence Defendants' breached their fiduciary duty respecting the Plan's investment in Dell stock described above, under the circumstances alleged herein, in that a prudent fiduciary acting under similar circumstances would have made different investment decisions.

115.    The Prudence Defendants were obligated to discharge their duties with respect to the Plan with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.   ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

116.    According to United States Department of Labor ("DOL") regulations and case law interpreting this statutory provision, a fiduciary's investment or investment course of action is prudent if: (a) he has given appropriate consideration to those facts and circumstances that, given the scope of such fiduciary's investment duties, the fiduciary knows or should know are relevant to the particular investment or investment course of action involved, including the role the investment or investment course of action plays in that portion of the plan's investment portfolio with respect to which the fiduciary has investment duties; and (b) he has acted accordingly.

117.    According to DOL regulations, "appropriate consideration" in this context includes, but is not necessarily limited to:

(a)    A determination by the fiduciary that the particular investment or investment course of action is reasonably designed, as part of the portfolio (or, where applicable, that portion of the plan portfolio with respect to which the fiduciary has investment duties), to further the purposes of the plan, taking into consideration the risk of loss and the opportunity for gain (or other return) associated with the investment or investment course of action; and

(b)    Consideration of the following factors as they relate to such portion of the portfolio:

(i)    The composition of the portfolio with regard to diversification;

(ii)    The liquidity and current return of the portfolio relative to the anticipated cash flow requirements of the plan; and

32

(iii)    The projected return of the portfolio relative to the funding objectives of the plan.

118.    Given the conduct of the Company as described above, the Prudence Defendants could not possibly have acted prudently when they continued to invest the Plan's assets in Dell stock because, among other reasons:

(a)    The Prudence Defendants knew of and/or failed to investigate the failures of the Company as alleged above, including, but not limited to the following, which made the Company an imprudent investment for the Plan, that Dell's leadership position in the U.S. and worldwide markets for laptop and desktop computers and accessories had been rapidly eroded and could no longer be counted on to deliver strong growth prospects;

(b)    The risk associated with the investment in Dell stock during the Class Period was by far above and beyond the normal, acceptable risk associated with investment in company stock;

(c)    This abnormal investment risk could not have been known by the Plan's participants, and the Prudence Defendants knew that it was unknown to them, as it was to the market generally, because the fiduciaries never disclosed it;

(d)    Knowing of this extraordinary risk, and knowing the participants did not know it, the Prudence Defendants had a duty to avoid permitting the Plan or any participant from investing the Plan's assets in Dell stock; and

(e)    Further, knowing that the Plan was not diversified, but was heavily invested in Company stock, the Prudence Defendants had a heightened responsibility to divest the Plan of Company stock if it became or remained imprudent, particularly when the Plan document stated that the fiduciaries of the plan had a duty to "diversify[] the investments of the Plan so as to minimize the risk of large losses….". Plan document § 12.3(c). Indeed, pursuant to ERISA §404(a)(1(D), the Defendants named in this Count were required to comply with the

33

terms of the Plan by diversifying the assets of the Plan so as to minimize the risk of large losses. Defendants breached this duty.

119.    The Prudence Defendants breached their fiduciary duties by, *inter alia*, failing to engage independent advisors who could make independent judgments concerning the Plan's investment in Dell; failing to notify appropriate federal agencies, including the DOL, of the facts and circumstances that made Dell stock an unsuitable investment for the Plan; failing to take such other steps as were necessary to ensure that participants' interests were loyally and prudently served; with respect to each of these above failures, doing so in order to avoid adversely impacting their own compensation or drawing attention to Dell's inappropriate practices; and by otherwise placing their own and Dell's improper interests above the interests of the participants with respect to the Plan's investment in Dell stock.

120.    Moreover, a fiduciary's duties of loyalty and prudence require it to disregard plan documents or directives that it knows or reasonably should know would lead to an imprudent result or would otherwise harm plan participants or beneficiaries. ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D). Thus, a fiduciary may not blindly follow plan documents or directives that would lead to an imprudent result or that would harm plan participants or beneficiaries, nor allow others, including those whom they direct or who are directed by the plan, to do so.

121.    The Prudence Defendants breached this duty by: (a) continuing to offer Dell stock as an investment option for the Plan for participant contributions; and (b) for both employee and employer contributions to the Fund, continuing to invest those contributions in the Fund and the assets of the Fund in Dell stock rather than in cash or other short-term investment options, and, for each of these actions, doing so when the Prudence Defendants knew or should have known that Dell stock no longer was a prudent investment for participants' retirement savings.

122.    As a consequence of the Prudence Defendants' breaches of fiduciary duty alleged in this Count, the Plan suffered tremendous losses. If the Prudence Defendants had discharged

34

their fiduciary duties to prudently invest the Plan's assets, the losses suffered by the Plan would have been minimized or avoided. Therefore, as a direct and proximate result of the breaches of fiduciary duty alleged herein, the Plan, and indirectly Plaintiffs and the other Class members, lost millions of dollars of retirement savings.

123. Pursuant to ERISA §§ 409, 502(a)(2) and (a)(3), 29 U.S.C. §§ 1109, 1132(a)(2) and (a)(3), the Prudence Defendants are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count and to provide other equitable relief as appropriate.

**B.      Count II: Failure to Provide Complete and Accurate Information to Participants and Beneficiaries**

124. Plaintiffs incorporate by reference the allegations above.

125. This Count alleges fiduciary breach against Defendant Dell and the Committee Defendants (the "Communications Defendants").

126. As alleged above, during the Class Period the Communications Defendants were named fiduciaries pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), or *de facto* fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), or both. Thus, they were bound by the duties of loyalty, exclusive purpose, and prudence.

127. As alleged above, the scope of the Communications Defendants' duties included disseminating Plan documents and/or Plan-related information to participants regarding the Plan and/or assets of the Plan.

128. The duty of loyalty under ERISA requires fiduciaries to speak truthfully to participants, not to mislead them regarding the Plan or the Plan's assets, and to disclose information that participants need in order to exercise their rights and interests under the Plan. This duty to inform participants includes an obligation to provide participants and beneficiaries of the Plan with complete and accurate information, and to refrain from providing false information or concealing material information regarding the Plan's investment options such that

35

participants can make informed decisions with regard to investment options available under the Plan. This duty applies to all the Plan's investment options, including investment in Dell stock.

129.    This fiduciary duty to honestly communicate with participants is designed not merely to inform participants and beneficiaries of conduct, including illegal conduct, bearing on their retirement savings, but also to forestall such illegal conduct in the first instance.  By failing to discharge their disclosure duties, the Communications Defendants facilitated the illegal conduct in the first instance.

130.    The Communication Defendants were obligated to provide participants with complete and accurate information concerning all of the Plan's assets.  However, their duties of honest disclosure were especially significant with respect to company stock because:  a) during the Class Period, a large percentage of the Plan's assets were invested in it; b) company stock is a particularly risky and volatile investment, even in the absence of company misconduct; and c) participants tend to underestimate the likely risk and overestimate the likely return of investment in company stock investment.

131.    The Communications Defendants breached their ERISA duty to inform participants by failing to provide complete and accurate information regarding the Company and Dell stock as alleged above, and, generally, by conveying through statements and omissions inaccurate information regarding the soundness of Dell stock, and the prudence of investing retirement contributions in the stock.

132.    In particular, the Committee Defendants were responsible for communications made in the official Plan documents and materials which were disseminated directly to all participants to be used by participants in the management of the investment of their Plan accounts in the Fund, including the Plan's SPDs which incorporated by reference the Company's materially misleading and inaccurate SEC filings and reports.  *See* 2007 SPD, Dell-ERISA-

0000362; 2005 SPD, Dell-ERISA-0000334; 2004 SPD, Dell-ERISA-0000300; 2003 SPD, Dell-ERISA-0000258.

133.    These failures were particularly devastating to the Plan and the participants, as a significant percentage of the Plan's assets were invested in Dell stock during the Class Period, with acquisitions of Dell stock occurring at significantly inflated prices.  Thus, the stock's precipitous decline had an enormous impact on the value of participants' retirement assets.  Had such disclosures been made to participants, or Plan fiduciaries, if any, who were not aware of facts alleged herein, participants and fiduciaries could have taken action to protect the Plan, and the disclosure to participants itself, which necessarily would have been accompanied by disclosure to the market, would have assured that any further acquisitions of Dell stock by the Plan would have occurred at an appropriate price.

134.    As a consequence of the failure of the Communications Defendants to satisfy their duty to provide complete and accurate information under ERISA, participants lacked sufficient information to make informed choices regarding investment of their retirement savings in Dell stock, or to appreciate that under the circumstances known or that should have been known to the Communications Defendants, but not known by participants, Dell stock was an inherently unsuitable and inappropriate investment option for their Plan accounts.

135.    The Communications Defendants' failure to provide complete and accurate information regarding Dell stock was uniform and Plan-wide, and impacted all Plan participants the same way in that none of the participants received crucial, material information regarding the risks of Dell stock as a Plan investment option and all Plan acquisitions of employer stock during the Class Period occurred at inflated prices.

136.    As a consequence of the Communications Defendants' breaches of fiduciary duty, the Plan suffered tremendous losses.  If the Communications Defendants had discharged their fiduciary duties to prudently disclose material information, the losses suffered by the Plan would

have been minimized or avoided. Therefore, as a direct and proximate result of the breaches of fiduciary duty alleged herein, the Plan, and indirectly Plaintiffs and the other Class members, lost millions of dollars of retirement savings.

137.    Pursuant to ERISA §§ 409 and 502(a)(2) and (a)(3), 29 U.S.C. §§ 1109(a) and 1132(a)(2) and (a)(3), the Communications Defendants are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count and to provide other equitable relief as appropriate.

## C.    Count III: Failure to Monitor Fiduciaries

138.    Plaintiffs incorporate by reference the allegations above.

139.    This Count alleges fiduciary breach against the Director Defendants (the "Monitoring Defendants").

140.    As alleged above, during the Class Period the Monitoring Defendants were named fiduciaries pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), or *de facto* fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), or both. Thus, they were bound by the duties of loyalty, exclusive purpose, and prudence.

141.    As alleged above, the scope of the fiduciary responsibilities of the Director Defendants included the responsibility to appoint, remove, and, thus, monitor the performance of the Committee Defendants.

142.    Under ERISA, a monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment and holding of plan assets, and must take prompt and effective action to protect the plan and participants when they are not.

143.    The monitoring duty further requires that appointing fiduciaries have procedures in place so that on an ongoing basis they may review and evaluate whether the "hands-on" fiduciaries are doing an adequate job (for example, by requiring periodic reports on their work

and the plan's performance, and by ensuring that they have a prudent process for obtaining the information and resources they need). In the absence of a sensible process for monitoring their appointees, the appointing fiduciaries would have no basis for prudently concluding that their appointees were faithfully and effectively performing their obligations to plan participants or for deciding whether to retain or remove them.

144. Furthermore, a monitoring fiduciary must provide the monitored fiduciaries with complete and accurate information in their possession that they know or reasonably should know that the monitored fiduciaries must have in order to prudently manage the plan and the plan assets, or that may have an extreme impact on the plan and the fiduciaries' investment decisions regarding the plan.

145. The Monitoring Defendants breached their fiduciary monitoring duties by, among other things:

> (a)    failing, at least with respect to the Plan's investment in Company stock, to monitor their appointees, to evaluate their performance, or to have any system in place for doing so, and standing idly by as the Plan suffered enormous losses as a result of their appointees' imprudent actions and inaction with respect to Company stock;

> (b)    failing to ensure that the monitored fiduciaries appreciated the true extent of Dell's highly risky and inappropriate business and accounting practices, and the likely impact of such practices on the value of the Plan's investment in Dell stock;

> (c)    to the extent any appointee lacked such information, failing to provide complete and accurate information to all of their appointees such that they could make sufficiently informed fiduciary decisions with respect to the Plan's assets and, in particular, the Plan's investment in the Fund; and

(d)    failing to remove appointees whose performance was inadequate in that they continued to permit the Plan to make and maintain investments in the Fund despite the practices that rendered Dell stock an imprudent investment during the Class Period.

146.    As a consequence of the Monitoring Defendants' breaches of fiduciary duty, the Plan suffered tremendous losses. If the Monitoring Defendants had discharged their fiduciary monitoring duties as described above, the losses suffered by the Plan would have been minimized or avoided. Therefore, as a direct and proximate result of the breaches of fiduciary duty alleged herein, the Plan, and indirectly Plaintiffs and the other Class members, lost millions of dollars of retirement savings.

147.    Pursuant to ERISA §§ 409, 502(a)(2) and (a)(3), 29 U.S.C. §§ 1109, 1132(a)(2) and (a)(3), the Monitoring Defendants are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count and to provide other equitable relief as appropriate.

**D.    Count IV: Co-Fiduciary Liability**

148.    Plaintiffs incorporate by reference the allegations above.

149.    This Count alleges co-fiduciary liability against all Defendants (the "Co-Fiduciary Defendants").

150.    As alleged above, during the Class Period the Co-Fiduciary Defendants were named fiduciaries pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), or *de facto* fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), or both. Thus, they were bound by the duties of loyalty, exclusive purpose, and prudence.

151.    As alleged above, ERISA § 405(a), 29 U.S.C. § 1105(a), imposes liability on a fiduciary, in addition to any liability which he may have under any other provision, for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if he knows of a

breach and fails to remedy it, knowingly participates in a breach, or enables a breach. The Co-Fiduciary Defendants breached all three provisions.

152. **Knowledge of a Breach and Failure to Remedy.** ERISA § 405(a)(3), 29 U.S.C. § 1105(a)(3), imposes co-fiduciary liability on a fiduciary for a fiduciary breach by another fiduciary if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach. Upon information and belief, each Defendant knew of the breaches by the other fiduciaries and made no efforts, much less reasonable ones, to remedy those breaches. In particular, they did not communicate their knowledge of the Company's illegal activity to the other fiduciaries.

153. In particular, because Dell and the Director Defendants knew of the Company's failures and inappropriate business practices, they also knew that the Prudence Defendants were breaching their duties by continuing to invest in Company stock. Yet, they failed to undertake any effort to remedy these breaches and, instead, compounded them by downplaying the significance of Dell's failed and inappropriate business practices and obfuscating the risk that the practices posed to the Company, and, thus, to the Plan.

154. **Knowing Participation in a Breach.** ERISA § 405(a)(1), 29 U.S.C. § 1105(a)(1), imposes liability on a fiduciary for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach. Dell knowingly participated in the fiduciary breaches of the Prudence Defendants in that it benefited from the sale or contribution of its stock at prices that were disproportionate to the risks for Plan participants. Likewise, the Monitoring Defendants knowingly participated in the breaches of the Prudence Defendants because, as alleged above, they had actual knowledge of the facts that rendered Dell stock an imprudent retirement investment and, yet, ignoring their oversight responsibilities, permitted the Prudence Defendants to breach their duties. Moreover,

41

as alleged above, each of the Defendants participated in the management of the Plan's improper investment in the Fund and, upon information and belief, knowingly participated in the improper management of that investment by the other Defendants.

155. **Enabling a Breach.** ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2), imposes liability on a fiduciary if, by failing to comply with ERISA § 404(a)(1), 29 U.S.C. §1104(a)(1), in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled another fiduciary to commit a breach.

156. The Monitoring Defendants' failure to monitor the Prudence Defendants enabled the Committee Defendants to breach their duties.

157. As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, and indirectly Plaintiffs and the Plan's other participants and beneficiaries, lost millions of dollars of retirement savings.

158. Pursuant to ERISA §§ 409, 502(a)(2) and (a)(3), 29 U.S.C. §§ 1109, 1132(a)(2) and (a)(3), the Co-Fiduciary Defendants are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count and to provide other equitable relief as appropriate.

## XI.    CAUSATION

159. The Plan suffered millions of dollars in losses of vested benefits because substantial assets of the Plan were imprudently invested or allowed to be invested by Defendants in the Fund during the Class Period in breach of Defendants' fiduciary duties.

160. Had the Defendants properly discharged their fiduciary and co-fiduciary duties, including the monitoring and removal of fiduciaries who failed to satisfy their ERISA-mandated duties of prudence and loyalty, eliminating Dell stock as an investment alternative when it became imprudent, and divesting the Plan of Dell stock when maintaining such an investment became imprudent, the Plan would have avoided some or all of the losses that it suffered.

## XII.    REMEDY FOR BREACHES OF FIDUCIARY DUTY

161.    The Defendants breached their fiduciary duties in that they knew or should have known the facts as alleged above and, therefore, knew or should have known that the Plan's assets should not have been invested in the Fund during the Class Period.

162.    As a consequence of the Defendants' breaches, the Plan suffered a significant loss of vested benefits.

163.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) authorizes a plan participant to bring a civil action for appropriate relief under ERISA § 409, 29 U.S.C. § 1109.  Section 409 requires "any person who is a fiduciary…who breaches any of the…duties imposed upon fiduciaries…to make good to such plan any losses to the plan….".  Section 409 also authorizes "such other equitable or remedial relief as the court may deem appropriate….".

164.    With respect to calculation of the losses to the Plan, breaches of fiduciary duty result in a presumption that, but for the breaches of fiduciary duty, the Plan would not have made or maintained their investments in the challenged investment and, instead, prudent fiduciaries would have invested the Plan's assets in the most profitable alternative investment available to them. Alternatively, losses may be measured not only with reference to the decline in stock price relative to alternative investments, but also by calculating the additional shares of Dell stock that the Plan would have acquired, had the Plan fiduciaries taken appropriate steps to protect the Plan.  The Court should adopt the measure of loss most advantageous to the Plan.  In this way, the remedy restores the Plan's lost value and puts the participants in the position they would have been in if the Plan had been properly administered.

165.    Plaintiffs and the Class are therefore entitled to relief from Defendants in the form of:

(a)    a monetary payment to the Plan to make good to the Plan the loss of vested benefits to the Plan resulting from the breaches of fiduciary duties alleged above in an

amount to be proven at trial based on the principles described above, as provided by ERISA § 409(a), 29 U.S.C. § 1109(a);

(b)     injunctive and other appropriate equitable relief to remedy the breaches alleged above, as provided by ERISA §§ 409(a), 502(a)(2) and (3), 29 U.S.C. §§ 1109(a), 1132(a)(2) and (3);

(c)     reasonable attorney fees and expenses, as provided by ERISA § 502(g), 29 U.S.C. § 1132(g), the common fund doctrine, and other applicable law;

(d)     taxable costs and interest on these amounts, as provided by law; and

(e)     such other legal or equitable relief as may be just and proper.

## XIII.     CLASS ACTION ALLEGATIONS

166.    **Class Definition.**  Plaintiffs bring this action as a class action pursuant to Rules 23(a), (b)(1), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of Plaintiffs and the following class of persons similarly situated (the "Class"):

> All persons, other than Defendants, who were participants in or beneficiaries of the Plan at any time between February 13, 2003 and the present, and whose accounts included investments in Dell stock.

167.    **Class Period.**  The fiduciaries of the Plan knew or should have known at least by February 13, 2003, that the Company's material weaknesses were so pervasive that Dell stock could no longer be offered as a prudent investment for retirement Plan.

168.    **Numerosity.**  The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiffs believe there are, based on the Plan's Form 5500s for Plan year 2004, more than 30,000 members of the Class who participated in, or were beneficiaries of, the Plan during the Class Period.

169.  **Commonality.**  Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

    (a)    whether Defendants each owed a fiduciary duty to Plaintiffs and members of the Class;

    (b)    whether Defendants breached their fiduciary duties to Plaintiffs and members of the Class by failing to act prudently and solely in the interests of the Plan's participants and beneficiaries;

    (c)    whether Defendants violated ERISA; and

    (d)    whether the Plan suffered losses and, if so, what is the proper measure of damages.

170.  **Typicality.**  Plaintiffs' claims are typical of the claims of the members of the Class because:  (a) to the extent Plaintiffs seek relief on behalf of the Plan pursuant to ERISA § 502(a)(2), their claims on behalf of the Plan are not only typical of, but identical to claims under this section brought by any Class member; and (b) to the extent Plaintiffs seek relief under ERISA § 502(a)(3) on behalf of themselves for equitable relief, that relief would affect all Class members equally.

171.  **Adequacy.**  Plaintiffs will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action, complex, and ERISA litigation.  Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

172.  **Rule 23(b)(1)(B) Requirements.**  Class action status in this ERISA action is warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class which

would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede their ability to protect their interests.

173.    **Other Rule 23(b) Requirements.**  Class action status is also warranted under the other subsections of Rule 23(b) because: (a) prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants; (b) Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole; and (c) questions of law or fact common to members of the Class predominate over any questions affecting only individual members, and a class action is superior to the other available methods for the fair and efficient adjudication of this controversy.

## XIV.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for:

A.    A Declaration that Defendants, and each of them, have breached their ERISA fiduciary duties to the participants;

B.    An Order compelling Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of their fiduciary duties, including loss of vested benefits to the Plan resulting from imprudent investment of the Plan's assets; to restore to the Plan all profits the Defendants made through use of the Plan's assets; and to restore to the Plan all profits which the participants would have made if Defendants had fulfilled their fiduciary obligations;

C.    Imposition of a constructive trust on any amounts by which any Defendant was unjustly enriched at the expense of the Plan as the result of breaches of fiduciary duty;

D.    An Order enjoining Defendants, and each of them, from any further violations of their ERISA fiduciary obligations;

E.    An Order requiring Defendants to appoint one or more independent fiduciaries to participate in the management of the Plan's investment in Dell stock;

46

F.    Actual damages in the amount of any losses the Plan suffered, to be allocated among the participants' individual accounts in proportion to the accounts' losses;

G.    An Order awarding costs pursuant to 29 U.S.C. § 1132(g);

H.    An Order awarding attorneys' fees pursuant to the common fund doctrine, 29 U.S.C. § 1132(g), and other applicable law; and

I.    An Order for equitable restitution and other appropriate equitable and injunctive relief against the Defendants.

Dated this 31st day of January, 2007.

Respectfully submitted:

**KELLER ROHRBACK L.L.P.**

By: s/ Lynn L. Sarko
Lynn L. Sarko
Derek W. Loeser
Erin M. Riley
Raymond J. Farrow
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
Telephone: (206) 623-1900
Facsimile: (206) 623-3384

**SCHATZ NOBEL IZARD, P.C.**
Robert A. Izard
Mark P. Kindall
20 Church Street, Suite 1700
Hartford, CT 06103
Telephone: (860) 493-6292
Facsimile: (860) 493-6290

**Attorneys for Plaintiffs Gerald S. Lee and David Norman and Proposed Co-Lead Counsel for Consolidated ERISA Action**

47

**BROWN McCARROLL, L.L.P.**
THOMAS H. WATKINS
State Bar No. 20928000
ALBERT CARRION JR.
State Bar No. 03883
100111 Congress Avenue, Suite 1400
Austin, Texas 78701
(512) 472-5456 (Telephone)
(512) 480-5033 (Direct Fax)

**Attorneys for Plaintiffs David Norman and
Gerald S. Lee and Proposed Interim Liaison
Counsel for Consolidated ERISA Action**

**SHUMAN & BERENS LLP**
Kip B. Shuman
Jeffrey A. Berens
801 East 17th Avenue
Denver, CO 80218-1417
Telephone: (303) 861-3003
Facsimile: (303) 83-6920

**Attorneys for Plaintiff David Norman**

**MILBERG WEISS & BERSHAD LLP**
Lori G. Feldman
One Pennsylvania Plaza
New York, NY 10119-0165
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

**SCOTT & SCOTT, LLC**
David R. Scott
Geoffrey M. Johnson
33 River Street
Chagrin Falls, OH 44022
Telephone: (440) 247-8200
Facsimile: (440) 247-8275

**THE JACKS LAW FIRM**
Tommy Jacks
1205 Rio Grande Street
Austin, TX 78701
Telephone: (212) 478-4422
Facsimile: (212) 868-122

**Attorneys for Plaintiff Enrique Rangel, Jr.**

48

**GAINEY & MCKENNA**
Thomas J. McKenna
295 Madison Avenue, 4th
New York, NY  10017
Telephone:  (212) 983-1300
Facsimile:  (212) 983-0383

**TOMBLIN CARNES MCCORMACK, LLP**
James M. McCormack
816 Congress Avenue, Suite 1510
Austin, TX  78701
Telephone:  (512) 615-2400
Facsimile:  (512) 615-2420

**Attorneys for Andre Bowen**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 31st day of January, 2006, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system which will send notification of such filing

to the following:

Mary K. Blasy
**Lerach Coughlin Stoia Geller Rudman &
Robbins LLP**
655 West Broadway, Suite 1900
San Diego, CA 92101

Willie C. Briscoe
Joe Kendall
**Provost & Umphrey Law Firm, LLP**
3232 McKinney Avenue, Suite 700
Dallas, TX 75204

Joseph F. Brophy
**Bishop London Brophy & Dodds, PC**
3701 Bee Caves Road, Suite 200
Austin, TX 78746

Don L. Davis
**Byrd Davis Furman**
707 West 34th Street
Austin, TX 78705

Dirk M. Jordan
**Law Office of Dirk Jordan**
P.O. Box 50204
Austin, TX 78763-3288

Roger L. Mandel
**Attorney at Law**
3100 Monticello Avenue, Suite 750
Dallas, TX 75205

Mary F. Keller
Larry F. York
**York, Keller & Field, LLP**
816 Congress Avenue, Suite 1670
Austin, TX 78701

Thomas E. Bilek
**Hoeffner, Bilek & Eidman, L.L.P.**
1000 Louisiana Street
Suite 1302
Houston, TX 77002

Paul L. Smith
Robyn Pozza Dollar
**Paul L. Smith & Associates**
9433 Bee Cave Rd.
Bldg. II, Suite 203
Austin, TX 78733

David R. Scott
**Scott & Scott, LLC**
108 Norwich Ave.
P.O. Box 192
Colchester, CT 06415

Darren J. Check
Christopher L. Nelson
Katharine M. Ryan
**Schiffrin & Barroway, LLP**
280 King of Prussia Road
Radnor, PA 19087

Harvey F. Cohen
**Toler Schaffer, LLP**
5000 Plaza on the Lake, Suite 265
Austin, TX 78746

Albert A. Carrion, Jr.
Thomas H. Watkins
**Brown, McCarroll LLP**
111 Congress Ave., Suite 1400
Austin, TX 78701

Roger F. Claxton
**Claxton & Hill, P.L.L.C.**
3131 McKinney Ave., Suite 700
Dallas, TX 75204-2471

Kip B. Schuman
Jeffrey A. Berens
**Shuman & Berens LLP**
801 East 17th Ave.
Denver, CO  80218-1417

Robert A. Izard
**Schatz Nobel Izard, P.C.**
20 Church Street, Suite 1700
Hartford, CT  06103

W. Thomas Jacks
**Jacks Law Firm**
1205 Rio Grande Street
Austin, TX  78701

James M. McCormack
**Tomblin Carnes McCormack, LLP**
816 Congress Ave., Suite 1510
Austin, TX  78701

Brian S. Greig
Peter A. Stokes
**Fulbright & Jaworski L.L.P.**
600 Congress Avenue, Suite 2400
Austin, TX  78701-3271

Patricia J. Villareal
Thomas R. Jackson
Greg L. Weselka
Michael L. Davitt
**Jones Day**
2727 North Harwood Street
Dallas, TX  75201

James P. Baker
**Jones Day**
555 California Street, 26th Floor
San Francisco, CA  94104

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

Naumon A. Amjed
Jay W. Eisenhofer
Geoffrey C. Jarvis
Sharan Nirmul
**Grant & Eisenhofer, P.A.**
1201 N. Market St., Ste. 2100
Wilmington, DE  19801

Richard Schiffrin
Stuart L. Berman
Ian Berg
David Kessler
Sean M. Handler
**Schiffrin & Barroway, LLP**
280 King of Prussia Road
Radnor, PA  19087

Leonard Barrack
Chad A. Carder
Jeffrey W. Golan
Mark R. Rosen
**Barrack, Rodos & Bacine**
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103

Daniel P. Chiplock
Rovery G. Eisler
Steven E. Fineman
Richard M. Heimann
Bruce W. Leppla
**Lieff, Cabraser, Heimann & Bernstein LLP**
780 Third Avenue, 48th Floor
New York, NY  10017-2024

1

Christopher A. Seeger
Stephen A. Weiss
Eric T. Chaffin
Michael Farkas
**Seeger Weiss, L.L.P.**
One William Street
New York, NY 10004

William S. Lerach
Darren J. Robbins
Ramzi Amadou
Stacey Kaplan
**Lerach Coughlin Stoia Geller Rudman &
Robbins LLP**
655 West Broadway, Suite 1900
San Diego, CA 92101

Wilmer D. Masterson, III
**Kilgore & Kilgore**
3109 Carlisle Street, Suite 200
Dallas, TX 75204

Lori G. Feldman
**Milberg Weiss Bershad & Schulman LLP**
One Pennsylvania Plaza
New York, NY 1011900165

Curtis C. Graves
Richard L. Hathaway
**Graves Hathaway PLLC**
1700 Commerce Street, Suite 1405
Dallas, TX 75219

Frank Johnson
Brett W. Weaver
**Johnson Law Firm APC**
655 W. Broadway, Suite 1400
San Diego, CA 92101

Marc I. Gross
Stanley Grossman
Fei-Lu Qian
**Pmerantz Haudek Block Grossman & Gross
LLP**
100 Park Ave.
New York, NY 10010

Patrick V. Dahlstrom
Joshua B. Silverman
**Pomerantz Haudek Block Grossman &
Gross LLP**
One North LaSalle Street, Suit 2225
Chicago, IL 60602

Mark P. Kindall
**Schatz Nobel Izard PC**
20 Church Street, Suite 1700
Hartford, CT 06103

Geoffrey M. Johnson
**Scott & Scott, LLC**
33 River Street
Chagrin Falls, OH 44022

Joshua M. Lifshitz
**Bull & Lifshitz**
246 West 38th Street
New York, NY 10018

Martin D. Chitwood
Nikole M. Davenport
Gregory E. Keller
Michael R. Peacock
Meryl W. Edelstein
Rover W. Killorin
**Chitwood Harley Harnes LLP**
2300 Premenade II
1230 Peachtree Street NE
Atlanta, GA 30309

3

Ronald L. Motley
Joseph F. Rice
Ann Kimmel Ritter
James M Hughes
**Motley Rice LLC**
P.O. Box 1792
28 Bridgeside Blvd.
Mount Pleasant, SC  28465

s/ Cathy A. Hopkins
Cathy A. Hopkins, Legal Assistant

3