IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2008 JUN 23 AM 10: 15

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____

*In re*

Case No. A-06-CA-758-SS

**Dell, Inc. ERISA LITIGATION**

---

**O R D E R**

BE IT REMEMBERED on the 23rd day of June 2008 the Court reviewed the file in the above-styled cause, and specifically Defendants' Motion to Dismiss and Memorandum in Support [#74], Plaintiffs' Memorandum in Opposition [#76] and Affidavit in Support of Opposition [#77], Defendants' Reply brief [#78], Plaintiffs' Unopposed Motion for Leave to File Supplemental Authority in Further Opposition to Defendants' Motion to Dismiss [#80], Defendants' Response to Plaintiffs' Unopposed Motion for Leave to File Supplemental Authority [#81], Defendants' Unopposed Motion for Leave to File Supplemental Authority in Further Support of Defendants' Motion to Dismiss [#83], Plaintiffs' Unopposed Motion for Leave to File Response to Supplemental Authority Filed by Defendants [#86], Defendants' Unopposed Notice of Supplemental Authority in Further Support of Defendants' Motion to Dismiss [#87], and Plaintiffs' Unopposed Motion for Leave to File Response to Defendants' Notice of Supplemental Authority in Further Support of Defendants' Motion to Dismiss [#88]. Plaintiffs' Unopposed Motion for Leave to File Supplemental Authority in Further Opposition to Defendants' Motion to Dismiss [#80], Defendants' Unopposed Motion for Leave to File Supplemental Authority in Further Support of Defendants' Motion to Dismiss [#83], Plaintiffs' Unopposed Motion for Leave to File Response to Supplemental Authority Filed by Defendants [#86], and Plaintiffs' Unopposed Motion for Leave to File Response to

Defendants' Notice of Supplemental Authority in Further Support of Defendants' Motion to Dismiss [#88], all being unopposed, are GRANTED. Additionally, the Court construes Defendants' Unopposed Notice of Supplemental Authority in Further Support of Defendants' Motion to Dismiss [#87] as a motion to file supplemental authority, which is GRANTED. Having considered these documents, the applicable law, and the case file as a whole, the Court now enters the following opinion and orders.

### Background

As part of its benefits package, Dell, Inc. ("Dell") offers its eligible employees the option of participating in the Dell Inc. 401(k) Plan ("the Plan"). Dell is the sponsor of the Plan and acts as its administrator. Second Amend. Compl. Ex. B, Plan § 10.1. An administrative committee appointed by Dell's directors serves as the Plan's named fiduciary. *Id.* at §§ 1.1(e), 10.1. The Plan is specially designed as a profit sharing plan. *Id.* at § 1.5.

The Plan offers participants a menu of fifteen different investment options including ten "core funds" and five "Pre-Mixed Portfolios." Second Amend. Compl. Ex. J, 2007 Summary Plan Description ("SPD") at 10-11. The Core Funds consist of individual investment funds "rang[ing] from lower to higher risk." *Id.* at 11. The Pre-Mixed Portfolios were added in 2004 and "[are] made up of a diversified mix of professionally-managed core funds." *Id.*; *see also* Def's Mot. to Dismiss at 6. The Dell Company Stock Fund is one of the ten Core Funds, and it invests in Dell common stock. Second Amend. Compl. Ex. J, 2007 SPD at 19.

As Dell employees, Plan participants "may invest in the Dell Company Stock Fund, but . . . are not required to do so." *Id.* Participants in the Plan direct their own investments. *See, e.g.,* Second Amend. Compl. Ex. K, 2005 SPD at 11. Plan participants can change their investment

selections at any time. *Id.* at 13. Dell also makes several types of employer contributions to each Plan participant's account: "Employer Matching Contributions," "Employer Retirement Savings Contributions," and "Employer Fail Safe Contributions." Second Amend. Compl. Ex. B, Plan § 3.2–3.4. These employer contributions are not restricted to Dell stock but are allocated to different "accounts" belonging to each Plan participant. *Id.* Under the terms of the Plan, the employee participant directs the investment of the funds in "each of his accounts," including the employer contribution accounts. *Id.* at § 5.1.

Because the Dell Company Stock Fund invests virtually all of its assets in a single security, Dell stock, the Plan's summary disclosure describes it as a non-diversified, high-risk investment option. Second Amend. Compl. Ex. J, 2007 SPD at 13; *see also* Second Amend. Compl. Ex. M, 2003 SPD at 30; Second Amend. Compl. Ex. L, 2004 SPD at 30; Second Amend. Compl. Ex. J, 2007 SPD at 19-20. The SPD expressly informs Plan participants that it is "possible to lose money if [they] invest in the Dell Stock Fund." *See, e.g.*, Second Amend. Compl. Ex. M, 2003 SPD at 30.

Nevertheless, the Plan itself is "specifically authorized to acquire and hold up to 100% of its assets in [Dell] [s]tock." Second Amend. Compl. Ex. B, Plan § 16.5. However, the Plan also imposes an express duty on "[e]ach fiduciary" to "diversify[] the investments of the Plan so as to minimize the risk of large losses, unless under the circumstances it is prudent not to do so." *Id.* at §12.3. Plaintiffs allege over 50.79 % of the Plan's total assets were invested in Dell stock during the class period, from May 16, 2002 to the present, in violation of the Plan language regarding diversification. Second Amend. Compl. ¶¶ 34, 3, 66.

Plaintiffs assert this heavy investment in Dell stock violated the Plan fiduciaries' duties under ERISA. Specifically, Plaintiffs assert Dell, as the administrator of the Plan, and the members of

-3-

Dell's Benefits Administration Committee (the "Committee Defendants") breached their fiduciary duty to follow the terms of the Plan by allowing the over concentration of Dell stock instead of diversifying the assets of the Plan. *Id.* Plaintiffs further assert the investment of Plan assets in Dell stock during the Class Period violated the fiduciaries' duty of prudence because they either knew or should have known the stock price was artificially inflated by Dell's undisclosed use of improper accounting and financial reporting techniques. Second Amend. Compl. ¶¶ 89-98.

Plaintiffs further allege Dell and the Committee Defendants (collectively, the "Communication Defendants"), breached their fiduciary duty to provide the Plan participants with complete and accurate information regarding the Plan. Plaintiffs allege the Communication Defendants provided materially misleading and inaccurate information to Plan participants through summary plan descriptions that incorporated by reference Dell's materially false or misleading SEC filings and reports. Second Amend. Compl. ¶ 138.

Plaintiffs also allege Dell's Board of Directors (the "Director Defendants"), which appointed the Committee Defendants, failed to introduce adequate procedures to evaluate the Committee's performance and/or remove Committee members when necessary. Second Amend. Compl. ¶ 151. Plaintiffs further allege the Directors failed to ensure all Committee members were adequately informed regarding the expected performance and risks of Dell stock. *Id.* Plaintiffs assert these failures amount to a breach of the Director Defendants' fiduciary duty to monitor the appointed Committee. Plaintiffs also allege the Director Defendants are liable as co-fiduciaries for their failure to prevent or remedy the breaches of the fiduciary duties of prudence and communication described above. *Id.* at ¶¶ 158–162.

Defendants collectively assert they did not breach any fiduciary duties under ERISA and therefore Plaintiffs' complaint should be dismissed. Specifically, Defendants assert the terms of the Plan do not create a duty of "actual diversification." Defendants argue the investment in Dell stock did not breach the statutory duty of prudence because Dell's stock never suffered a "precipitous decline" despite the alleged accounting misstatements. Def's Mot. to Dismiss at 3. Defendants argue the remaining duties to provide accurate information, monitor Plan administrators, and accept co-fiduciary liability are derivative of the duty of prudence. If Dell was not an imprudent investment, Defendants argue, there cannot have been a breach of any duty imposed by ERISA. In the alternative, Defendants assert all of Plaintiffs' claims rest on "estoppel-type" allegations of misrepresentation, and Plaintiffs have failed to plead detrimental reliance, a necessary element of an estoppel claim. *Id.* at 4–5.

## Analysis

### I.    Standard for 12(b)(6) Motion to Dismiss

ERISA does not have heightened pleading requirements. *Schied v. Dynegy, Inc. (In re Dynegy, Inc. ERISA Litig.)*, 309 F. Supp. 2d 861, 867 (S.D. Tex. 2004). Claims asserted under ERISA are subject to the notice pleading standard of Federal Rule of Civil Procedure 8. *Id.* Therefore, the plaintiff is only required to give a short and plain statement of his claim that gives his opponent fair notice of what the claim is and the grounds on which it rests. FED. R. CIV. P. 8(a). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007).

In deciding whether to dismiss a case for failure to state a claim pursuant to Rule 12(b)(6), "the Court must take the factual allegations as true, resolving any ambiguities or doubts regarding

the sufficiency of the claim in favor of the plaintiff." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-65 (2007) (internal citations omitted). Even under the liberal pleading standard set forth by Rule 12(b)(6), the Court may not assume the plaintiff can prove facts he has not alleged. *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 443 (5th Cir. 1986). Moreover, dismissal is appropriate where the complaint is devoid of facts to establish any one of the required elements of the claim asserted. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).

In evaluating a 12(b)(6) motion, the Court "must limit [its consideration] to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing Fed.R.Civ.P. 12(b)(6)). Documents not attached to the pleadings, but to the motion to dismiss, may be considered "part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim … [because i]n so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Id.* at 498-99 (citing *Venture Assoc. Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *see also Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312-314 (5th Cir. 2002).

## II.    ERISA

In 1974, Congress passed the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. ERISA is intended, in part, "to establish minimum standards of fiduciary

conduct for Trustees, Administrators and others dealing with retirement plans . . . and to improve the equitable character and soundness of private pension plans." H.R. Rep. No. 93-533 (1974), as reprinted in 1974 U.S.C.C.A.N. 4639, 4655. ERISA defines a fiduciary as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A) (2000).

ERISA fiduciaries have several affirmative duties: (1) to act solely in the interest of the participants and beneficiaries; (2) to exercise care, skill, prudence, and diligence; (3) to diversify the investments of the plan to minimize risk of loss unless it is imprudent to do so under the circumstances; and (4) to act in accordance with the documents and instruments governing the plan unless to do so would violate ERISA. *Id.* § 1104(a)(1). A fiduciary is personally liable for damages resulting from a breach of any of these fiduciary duties. 29 U.S.C. § 1109.

An ERISA Plan participant or beneficiary may bring a civil action against ERISA fiduciaries to recover benefits or for injunctive or equitable relief. 29 U.S.C. § 1132. However, ERISA provides that in the case of a pension plan which establishes individual accounts and allows participants to exercise control over the assets in their account, "no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control." 29 U.S.C. § 1104(c)(1)(B) (2000). Section 1104(c)(1)(B) is an affirmative defense to a breach of fiduciary duty claim. *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 311 (5th Cir. 2007).

ERISA also contains specific "safe harbor" provisions regarding eligible individual account plans ("EIAPs"). An EIAP is an individual account plan which is "(i) a profit-sharing, stock bonus, thrift, or savings plan [or] (ii) an employee stock ownership plan," 29 U.S.C. § 1107(d)(3)(A), and which "explicitly provides for acquisition and holding of qualifying employer securities." 29 U.S.C. § 1107(d)(3)(B). The Dell Inc. 401(k) Plan is an EIAP as described in 29 U.S.C. § 1107(d)(3)(A) and (B).

Because EIAPs are designed to hold employer securities, they are excepted from ERISA's general prohibition against a plan acquiring or holding such securities in an amount greater than ten percent (10%) of the fair market value of the assets in the plan. *Id.* § 1107(a)(2). For the same reason, EIAP fiduciaries do not have a duty to diversify and do not act imprudently by not diversifying the assets of an EIAP. In fact, ERISA explicitly states that "the diversification requirement...and the prudence requirement (only to the extent that it requires diversification)... [are] not violated by acquisition or holding of...qualifying employer securities." *Id.* § 1104(a)(2); *Kirschbaum v. Reliant Energy, Inc.*, — F.3d —, 2008 WL 1838324, *2 (5th Cir. Apr. 25, 2008) ("an EIAP fiduciary's decision to purchase or hold the employer's securities is exempt from the duty to diversify and the related duty of prudence insofar as it concerns asset diversification.").

Plaintiffs in this case assert that, notwithstanding the statutory exemption from any obligation to diversify an EIAP, Defendants had a duty to diversify under the express terms of the Plan and breached that duty by allowing the over-concentration of the Plan's holdings in Dell stock. Plaintiffs also allege Defendants breached the duty of prudence by investing in Dell stock because Defendants knew the stock was "artificially inflated" at the time it was purchased. Additionally, Plaintiffs assert

Defendants breached their duty to truthfully communicate to Plan participants and adequately monitor the administrators of the Plan.

Defendants argue the terms of the Plan do not require diversification of Dell holdings. Defendants argue the investment in Dell stock is prudent under an "abuse of discretion" standard of review. Defendants further assert the investment in Dell stock is prudent because Plaintiffs have failed to allege a "precipitous drop" in the stock's value and in fact the stock price has risen over the class period. Defendants assert Plaintiffs' remaining claims are derivative of the prudence claim, or alternatively are based on the theory of equitable estoppel for which Plaintiffs have failed to allege detrimental reliance.

Neither party's contentions are novel. In recent years, there have been more than fifty court decisions in cases alleging breaches of ERISA fiduciary duties after an employer's stock significantly declined. *See* Craig C. Martin & Elizabeth L. Fine, *ERISA Stock Drop Cases: An Evolving Standard*, 38 J. MARSHALL L. REV. 889, 901 (2005) (collecting cases). Many of the reported decisions in these cases arise from a defendant's motion to dismiss. *Id.* The outcome of these cases, however, varies widely, in part because several key legal standards in this area are still evolving. Dana M. Muir and Cindy A. Schipani, *The Challenge of Company Stock Transactions for Directors' Duties of Loyalty*, 43 HARV. J. LEGIS. 437, 462 (2006) (collecting cases).

### A. "Plan Imposed" Duty to Diversify

One area of contention is the extent to which the express terms of the Plan can modify ERISA's statutory exemption of EIAP fiduciaries from the duty to diversify Plan assets. The Dell Plan, like many others, expressly requires "[e]ach fiduciary" to "diversify[] the investments of the Plan so as to minimize the risk of large losses, unless under the circumstances it is prudent not to do

so." Second Amend. Compl. Ex. A, Plan §12.3. The duty to diversify articulated in § 12.3 of the Plan is taken, verbatim, from the fiduciary duties enumerated in the ERISA statute. *See* 29 U.S.C. § 1104(a)(1). Plaintiffs argue §12.3 operates to impose on the Plan fiduciaries the duty to diversify articulated in the ERISA statute, notwithstanding the statutory exemption granted by the Plan's EIAP status.

Defendants assert any Plan-imposed duty to diversify is limited by the language in Plan § 16.5, which states the Plan is "specifically authorized to acquire and hold up to 100% of its assets in [Dell] [s]tock." Second Amend. Compl. Ex. A, Plan § 16.5. Moreover, Defendants assert, participants in the Plan direct their own investments. Second Amend. Compl. Ex. A, Plan § 5.1. Accordingly, Defendants argue, the Plan cannot impose any duty on the fiduciaries to create "actual diversification" by "overrid[ing] an individual participant's investment choices." Defs.' Reply at 8–9. Defendants argue that any duty to diversify imposed by Plan § 12.3 is satisfied by the diverse portfolio options afforded employee investors by the Plan's fifteen different Funds. *Id.*

The District Court for the Southern District of Texas considered similar facts in litigation related to Enron's ERISA stock plans. *Tittle v. Enron (In re Enron Corp. Sec. Deriv. & ERISA Litig.)*, 284 F.Supp. 2d 511, 665–670 (S.D. Tex. 2003). Like the Dell Plan, Enron's Savings Plan was an EIAP, and its fiduciaries were thus exempted from any statutory duty to diversify. *Id.* at 665. Plaintiffs nevertheless claimed a breach of the fiduciary duty to diversify imposed by the language of the Savings Plan itself. *Id.* The Enron Savings Plan, like the Dell Plan in this case, contained fiduciary duty language mirroring the ERISA statute, including a requirement that "[e]ach fiduciary . . . diversify[] the investments of the Plan so as to minimize the risk of large losses, unless under the circumstances it is clearly not prudent to do so." *Id.* at 667–68. Similarly, the Enron Savings

Plan contained a clause stating "the Plan is specifically authorized to acquire and hold up to 100% of its assets in 'qualifying employer securities' . . . ." *Id.* at 668. Like the Dell Defendants in this case, the Enron defendants asserted the Savings Plan was investor-directed as described in 29 U.S.C. § 404(c). *Id.* at 574-79.[1] The Enron Plan differed from the Dell Plan in one important respect: unlike the Dell Plan, employer contributions to the Enron EIAP were to be made "primarily in Enron stock." *Id.* at 668. As described above, Dell Plan participants wholly direct the investment of both their own and their employer's contributions to their Plan accounts. Second Amend. Compl. Ex. A, Plan § 5.1.

In *Enron*, Judge Harmon found Plaintiffs had stated a claim for breach of a Plan-created fiduciary duty to diversify. 284 F.Supp. 2d at 668. Judge Harmon reasoned the diversification provision of the Enron Plan was not in conflict with the Plan's authorization to hold up to 100% of its assets in employer stock. *Id.* "While the Plan authorizes the trustee to hold 'up to 100% of its assets' in Enron stock, it does not mandate that the trustee hold 100%, or even 30% or 20%, of its assets in Enron stock, and, in fact, seemingly allows complete discretion in how much may be invested in Enron stock where the circumstances make such an investment imprudent." *Id.* at 668–69.

Defendants rely on *Scheid v. Dynegy, Inc. (In re Dynegy, Inc. ERISA Litig.)*, for a contrary result. 309 F.Supp. 2d 861, 895–96 (S.D. Tex. 2004). The Dynegy Plan, like the Enron and Dell Plans, was an EIAP, and therefore its fiduciaries were under no statutory duty to diversify. *Id.* at 895. The Dynegy plaintiffs claimed the Plan language imposed an independent duty to diversify

---

[1]The *Enron* court, however, reserved judgment on the precise extent to which the Enron Plan was investor-directed. 284 F.Supp. 2d at 574-79.

because, like the Enron and Dell Plans, the Dynegy Plan contained fiduciary duty language that tracked the language found in the ERISA statute, including a clause requiring each fiduciary to diversify the Plan's investments. *Id.* The Dynegy Plan likewise contained language specifically authorizing the Plan to hold up to 100% of its assets in employer stock. *Id.*

In *Dynegy*, Judge Lake acknowledged "plan terms identical to those at issue here were found to support a similar claim" in the *Enron* case. *Id.* (citing *Enron*, 284 F.Supp. 2d 668–69). Nevertheless, Judge Lake rejected Plaintiffs' claim for breach of a Plan-imposed duty to diversify, because the Dynegy Plan contained provisions that "mandate[d] the investment of employer matching contributions in Dynegy stock, . . . and these provisions distinguish the Dynegy Plan from the Enron Plan." *Id.* Noting that "the [Dynegy] plan documents require the employer match to be made in company stock," whereas the Enron Plan documents required employer contributions to be made "primarily" in employer stock, Judge Lake reasoned the Plan fiduciaries had no discretion under the terms of the Plan to diversify employer contributions, and therefore "plaintiff is unable to prove any set of facts capable of establishing that the committee defendants breached the fiduciary duty to comply with documents and instruments governing the Plan by failing to direct the diversification of employer matching contributions out of employer stock and into diversified investments." *Id.* at 896.

Unlike the *Dynegy* plan, the Dell Plan contains no requirement that employer contributions be made in company stock. In fact, the Dell Plan contains almost no instruction to its fiduciaries regarding the investment of employer contributions. Employer contributions are invested at the direction of each Plan participant. Second Amend. Compl. Ex. A, Plan § 5.1. This distinguishes the Dell Plan from both the Dynegy Plan and the Enron Plan, because Dynegy and Enron fiduciaries

directed the investment of employer contributions in those Plans. *Dynegy*, 309 F.Supp. 2d at 896; *Enron*, 284 F.Supp.2d at 668.

The *Dynegy* court, however, also considered whether the fiduciaries had a plan-imposed duty to diversify the employees' contributions to the Plan, which were entirely self-directed. 309 F.Supp. 2d at 896. These self-directed employee investments most closely resemble the Dell Plan, in which "every share . . . in a Plan account is there because of participant choice." Defs.' Reply at 9. With regard to participant-directed investments, Judge Lake found any Plan-imposed duty to diversify was satisfied by the array of different investment options provided by the Plan. 309 F.Supp. 2d at 896.

In asserting a claim for breach of the fiduciary duty to diversify, the plaintiff bears the initial burden of establishing the Plan portfolio is not diversified "on its face." *Metzler v. Graham*, 112 F.3d 207, 209 (5th Cir. 1997). Only then does the burden shift to the defendant to show why under the circumstances it was prudent not to diversify the investments of the plan. *Id.* The Dell Plan offers an array of 15 different Fund options. Judge Lake accepted a similar investment menu as evidence of diversification in *Dynegy*, albeit without extended discussion of his reasoning. 309 F.Supp. 2d at 896 ("Because plaintiff alleges that the self-directed portion of the Dynegy Plan has always included an array of investment options and does not, therefore, allege that the Plan was not diversified on its face, the court concludes that plaintiff has failed to state a claim . . . .").

The *Enron* opinion explicitly reserved judgment on the extent to which the Enron Plan was "self-directed." 284 F.Supp. 2d. at 574–579. However, the court recognized Plan participants had at least some right to direct the investment of their contributions. *Id.* With regard to these investments, Judge Harmon did not focus on the array of investment *options* offered by the Enron savings plan, but instead relied on the fact that 60% of the Plan's assets were *actually invested* in

Enron stock during the Class Period. *Id.* at 669. Noting the burden to show a portfolio is not diversified on its face is "minimal," Judge Harmon held Plaintiffs satisfied this requirement by "alleging [that] . . . in light of the red lights and rapidly deteriorating circumstances described in the pleadings, the Plan assets were dangerously overweighted in Enron stock, which constituted 60% of its investments." *Id.*

Though Judge Harmon's focus on a Plan's actual holdings may be appropriate in situations where a Plan fiduciary directs the investment of the Plan's assets, the Court finds Judge Lake's conclusion more persuasive in the instant case because both parties agree the Dell Plan's assets were invested entirely at the participants' discretion. Defendants had little, if any, authority under the Plan to "override" the employee investors' decisions to invest in Dell stock in order to diversify the actual holdings of the Plan. *See* Second Amend. Compl. Ex. A, Plan § 5.1. Therefore, to the extent the Plan required diversification, it could only be at the level of investment options rather than asset distribution. Because the Plan offers over a dozen investment options, it is diversified on its face. Plaintiffs have failed to state a claim for relief based on breach of any Plan-imposed duty to diversify.

## B.    The "Presumption of Prudence"

Plaintiffs next argue Defendants breached their duty of prudence by including the Dell Fund as one of the options in that investment menu. While 29 U.S.C. § 1104(a)(2) exempts EIAP fiduciaries from any duty to diversify, it "does not exempt EIAP fiduciaries from liability for 'other forms of imprudence.'" *Kirschbaum v. Reliant Energy, Inc.*, — F.3d —, 2008 WL 1838324, *4 (5th Cir. Apr. 25, 2008) (quoting *In re McKesson HBOC, Inc. ERISA Lit.*, 391 F.Supp. 2d 812, 825 (N.D.Cal. 2005). Plaintiffs assert it was imprudent to invest in any Dell stock once the Defendants

knew (or should have known) the stock price was artificially inflated. *See Id.* ("Count II asserts that in light of this inflation, the REI defendants had a fiduciary duty to halt further purchases of REI common stock"). "The prudence test asks whether the fiduciary selected investments 'with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.'" *Id.* at *8.

Defendants assert their investment of Plan assets in employer stock is entitled to a presumption of prudence because the Dell Plan is an EIAP. As the Third Circuit explained, EIAPs serve a dual statutory purpose– they are not only a "vehicle for retirement savings," but also serve to encourage employee stock ownership. *Edgar v. Avaya, Inc.*, 503 F.3d 340, 346-347 (3d Cir. 2007). Accordingly, judicial review of a fiduciary's decision to invest an EIAP plan's assets in employer stock must take into account this mixed purpose: "Defendants [are] 'not absolutely required to invest in employer securities,' but they [are] 'more than simply permitted to make such investments.'" *Id.* (quoting *Moench v. Robertson*, 62 F.3d 553, 571 (3d Cir. 1995)). As the *Avaya* court explained, if an EIAP fiduciary were "absolutely required" to invest in employer stock, his decision would be immune from judicial review. *Id.* If the investment in employer stock were simply one of many equal alternatives, then de novo review of the prudence of that decision would be appropriate. *Id.* In light of the fact that investments in employer stock are part of the dual purpose of an EIAP, the *Avaya* court explained that "an intermediate abuse of discretion standard would strike the appropriate balance between immunity from judicial review, at one extreme, and de novo review, at the other." *Id.* In other words, an EIAP fiduciary who invests Plan assets in the employer's security is entitled to a presumption that this investment decision was prudent, which

Plaintiff may rebut by establishing that the fiduciary abused its discretion by investing in employer securities. *Id.* (citing *Moench*, 62 F.3d at 571). In *Kirschbaum*, the Fifth Circuit adopted this presumption of prudence. 2008 WL 1838324 at *8-11.

Plaintiffs argue their "artificial inflation" claim should not be dismissed based on the presumption of prudence because: (1) the presumption only applies when the fiduciary is required by the terms of the plan to invest in company stock; (2) the presumption does not apply in artificial inflation cases; (3) the presumption does not apply on a motion to dismiss; and (4) assuming a presumption of prudence applies, Plaintiffs have pled sufficient facts to overcome it. Pl's Opp. at 12-22.[2]

### (1)   The presumption applies to any EIAP investment

Plaintiffs argue the *Moench* presumption of prudence applies only when a fiduciary "is required by the terms of a plan to invest in company stock." *Id.* at 12. Plaintiffs' argument is a misreading of *Moench* and *Avaya*. In *Kirschbaum*, the Fifth Circuit expressly held the presumption of prudence "applies to any allegations of fiduciary duty breach for failure to divest an EIAP or ESOP of company stock." *Kirschbaum*, 2008 WL 1838324 at *9. This protection is not limited by whether the plan requires, encourages, or permits investment so long as the investment is an EIAP or ESOP. *Id.* Normally, the fiduciary's decision to invest in a particular stock or other type of investment "is subject to de novo judicial review." *Avaya*, 503 F.3d at 346; *Moench*, 62 F.3d at 571. But, according to *Moench* and *Avaya*, when the express terms of the plan requires a fiduciary to

---

[2]Plaintiffs also argue the presumption of prudence should not apply to their failure to diversify claim because the Dell Plan imposed a duty to diversify. Pl's Opp. at 15. As explained above, Defendants have satisfied any Plan imposed duty to diversify because the plan was diversified on its face. Accordingly, the Court need not address whether the Plan imposed duty would affect the application of the presumption of prudence.

-16-

invest in company stock, the fiduciary is "immune from judicial inquiry." *Moench*, 62 F.3d at 571; *Avaya*, 503 F.3d at 346. The presumption of prudence applies to decisions between these two extremes where investment in a particular stock is not required but "more than simply permitted." *Moench*, 62 F.3d at 571; *Avaya*, 503 F.3d at 346.

Plaintiffs argue Defendants are not entitled to a presumption of prudence because the Dell Plan "does not even suggest, much less require, that the Plan invest in Dell stock." Pl's Opp. at 13. This argument, however, ignores the unique status of an EIAP or ESOP upon which *Moench* and *Avaya* heavily relied. Both cases cite the statutory preferences granted to EIAPs and the goal of employee ownership. *Moench*, 62 F.3d at 568; *Avaya*, 503 F.3d at 346. While declining "to adopt a per se rule that the decision of an ESOP [or EIAP] fiduciary to invest in employer securities is not subject to judicial review," the rule adopted by *Moench* and extended to EIAPs by *Avaya* does not require an express plan mandate or preference for such investments: "[A]n ESOP fiduciary who invests [plan] assets in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision. However, the plaintiff may overcome that presumption by establishing that the fiduciary abused its discretion by investing in employer securities." *Moench*, 62 F.3d at 571; *Avaya*, 503 F.3d at 346-47. The Fifth Circuit adopted a broad interpretation of the *Moench* presumption of prudence: "The *Moench* presumption logically applies to any allegations of fiduciary duty breach for failure to divest an EIAP or ESOP of company stock." *Kirschbaum*, 2008 WL 1838324 at *9. As a result, the presumption of prudence applies regardless of the degree to which the Dell Plan directs the fiduciaries to offer company stock as an investment option.

### (2)     The presumption applies to artificial inflation claims

Plaintiffs' second argument against the application of a presumption of prudence in this case is that the presumption applies only to a fiduciary's decision not to diversify investments in company stock, not to the fiduciary's decision to buy artificially inflated stock. Pls.' Opp. at 14. *Kirschbaum* explicitly rejects this argument:

> Kirschbaum contends that the court's presumption in favor of continued company stock investment should not apply at all where allegations, like his, relate to the fiduciaries' knowing purchases of stock at an artificially inflated price. *Moench*, Kirschbaum argues, concerned a "mere" failure to diversify. We reject this limitation. The distinction between these allegations is not only often elusive, but hardly justified by *Moench* itself...there is no principled difference between how a fiduciary should respond to "artificial inflation" of the stock price as opposed to other sorts of negative insider information. Consequently, the standard of judicial review applicable to such decisions should not generally turn on pleading artifices.

2008 WL 1838324 at *9. The presumption of prudence therefore applies to artificial inflation claims.

### (3)     The presumption of prudence may be applied at the motion to dismiss stage

Plaintiffs argue the presumption should not be applied at the motion to dismiss stage. Defendants point to several cases applying the presumption to the court's evaluation of the pleadings. *See Avaya*, 503 F.3d at 349; *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1098 (9th Cir. 2004) ("Plaintiffs' alleged facts effectively preclude a claim under *Moench*, eliminating the need for further discovery."); *In re Duke Energy ERISA Litig.*, 281 F.Supp. 2d 786, 795 (W.D.N.C. 2003). While cognizant of the liberal pleading standard set forth by Rule 12(b)(6), the Court may not assume the plaintiff can prove facts not alleged. *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 443 (5th Cir. 1986). "The Court must take the factual allegations as true, resolving any

ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-65 (2007) (internal citations omitted). But, "if a plaintiff does not plead all of the essential elements of his or her legal claim, a district court is required to dismiss the complaint pursuant to Rule 12(b)(6)." *Avaya*, 503 F.3d at 349. The Court must therefore determine at the motion to dismiss stage whether the Plaintiffs have plead facts which, taken as true, could overcome the *Moench* presumption.

### (4) Plaintiffs have not plead facts which could overcome the *Moench* presumption of prudence

Finally, Plaintiffs assert that, if the presumption of prudence applies to their claims, they have rebutted it by establishing an abuse of discretion. Plaintiffs argue it was an abuse of discretion to include the Dell stock as investment option for Plan participants once Defendants knew that the stock price was artificially inflated. Defendants argue Plan Participants chose to invest in Dell stock, and under 29 U.S.C. § 1104(c)(1)(B), "participant choice" thus nullifies any imprudence from including the Dell Company Stock Fund as a Plan investment option. Alternatively, Defendants argue the Dell stock was not a clearly imprudent investment because its value has increased over the Class Period and has never suffered a "precipitous drop."

The Plaintiffs have the burden of rebutting the presumption of prudence and must plead facts sufficient to show that "'owing to circumstances not known to the settlor and not anticipated by him

[the making of such investment] would defeat or substantially impair the accomplishment of the purposes of the trust.'" *Kirschbaum*, 2008 WL 1838324 at *8 (quoting *Moench*, 62 F.3d at 571). *Kirschbaum* discusses the full extent the protection provided by the *Moench* presumption and, by implication, the facts plaintiffs must plead to overcome the presumption:

> The presumption, however, is a substantial shield. As *Moench* states, it may only be rebutted if unforeseen circumstances would defeat or substantially impair the accomplishment of the trust's purposes. One cannot say that whenever plan fiduciaries are aware of circumstances that may impair the value of company stock, they have a fiduciary duty to depart from ESOP or EIAP plan provisions. Instead, there ought to be persuasive and analytically rigorous facts demonstrating that reasonable fiduciaries would have considered themselves bound to divest. Less than rigorous application of the *Moench* presumption threatens its essential purpose. A fiduciary cannot be placed in the untenable position of having to predict the future of the company stock's performance. In such a case, he could be sued for not selling if he adhered to the plan, but also sued for deviating from the plan if the stock rebounded.

*Id.* at *10 (internal citations omitted).

Plaintiffs claim the Defendants imprudently continued to purchase Dell stock despite knowledge the stock was overvalued. Specifically, Plaintiffs allege Defendants: (1) knew Dell was experiencing a significant decline in profit margins, sales, and market share but failed to accurately reveal the true nature of its declining business, instead reporting industry-leading results and growth; (2) knew improper accounting practices were inflating Dell's profit and revenue growth reports; (3) knew of, but failed to disclose, unfavorable inventory accumulation trends; (4) knew of, but failed to timely disclose, a massive battery recall; and (5) knew Dell was failing in its efforts to expand into other business areas. Second Amend. Compl. ¶¶ 69-73, 89. Plaintiffs point to Dell stock's under-performance compared to the NASDAQ Composite Index, the S&P 500 Index, and the Dodge & Cox Large Cap Value Fund from 2002 to the present as evidence continued investment in Dell stock was imprudent. Pls.' Opp. at 21.

-20-

Defendants argue Dell stock was never an imprudent investment despite its fluctuations. Throughout the class period, Dell's stock has remained near or above the price it traded on May 12, 2002, at the beginning of the class period, around $20 a share, although it rose as high as $42 a share during the class period. Defs.' Mot. to Dismiss at 18; Pls.' Resp. to Defs.' Supp. Authority at 4. During the alleged class period, Dell's net annual revenue has increased from $35.3 billion to $57.4 billion, total company assets increased from $15.5 billion to $25.6 billion, and Dell has made more than $2 billion in annual net income. Defs.' Mot. to Dismiss Ex. 1, Dell Inc. Annual Report (Form 10-K) at 21. Defendants also point out Dell's stock value actually rose on the public markets in response to Dell's disclosure of its financial accounting problems and restated financials. Defs.' Mot. to Dismiss at 18.

Even taken as true, Plaintiffs' allegations are insufficient to overcome Defendants' presumption of prudence. "One cannot say that whenever plan fiduciaries are aware of circumstances that may impair the value of company stock, they have a fiduciary duty to depart from ESOP or EIAP plan provisions." *Kirschbaum*, 2008 WL 1838324 at *10. Plaintiffs have not plead "persuasive and analytically rigorous facts demonstrating that reasonable fiduciaries would have considered themselves bound to divest." *Id.* Under the facts plead, Dell stock may not have been the best investment. But, similar to the situation in *Kirschbaum*, there is no indication Dell's survival was ever threatened nor that Dell's stock was in danger of becoming worthless. *Id.* ("There is no indication that REI's viability as a going concern was ever threatened, nor that REI's stock was in danger of becoming essentially worthless."). "Mere stock fluctuations, even those that trend downward significantly, are insufficient to establish the requisite imprudence to rebut the *Moench* presumption." *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1099 (9th Cir. 2004);

*Kirschbaum*, 2008 WL 1838324 at *10. As a result, Plaintiffs have failed to allege facts which could overcome Defendants' presumption of prudence and the "artificial inflation" claim must be dismissed under Fed. R. Civ. P. 12(b)(6).

### C.    "Derivative" Claims

Defendants argue the Plaintiffs' remaining claims, failure to provide complete and accurate information to participants and beneficiaries (Count II), failure to monitor fiduciaries (Count III), and co-fiduciary liability (Count IV), are "derivative" of the duty of prudence. Despite Defendants' unsupported assertion to the contrary, courts have recognized an independent cause of action for failure to provide complete and accurate information. The case cited by Defendants, *In re Duke Energy ERISA Litig.*, explicitly recognizes a cause of action for a breach of fiduciary duty arising from a material misrepresentation. 281 F.Supp. 2d 786, 791 (W.D.N.C. 2003); *see also Dynagy*, 309 F.Supp. 2d at 881 ("The court also concludes that plaintiff's allegations that the BPC defendants 'knew or should have known by virtue of their positions in the [c]ompany and access to contradictory information...that the SPD contained affirmative, material misrepresentations" is sufficient to state a claim for breach of fiduciary duty."). Defendants' motion to dismiss Plaintiffs' claim for failure to provide complete and accurate information as derivative of Plaintiffs' prudence claim therefore fails because failure to provide accurate information supports an independent cause of action.

However, Counts III and IV are derivative claims. *See Duke Energy*, 281 F.Supp. 2d at 795. To be held responsible for a failure to monitor or as a co-fiduciary, Plaintiffs must establish an underlying breach of fiduciary duty. *Id.* Thus, to the extent Counts III and IV allege a breach of the duty of prudence, those claims are dismissed for the reasons explained above. However, both counts

incorporate the allegations made under Count II for failure to provide complete and accurate information to participants and beneficiaries. Second Amend. Compl. ¶¶ 144, 154. Thus, to the extend Plaintiffs allege a failure to monitor or co-fiduciary liability for failure to provide complete and accurate information, Defendants' motion to dismiss as derivative is denied.

**D.    Materiality, Reliance, Causation, and Equitable Estoppel**

Defendants argued in their motion to dismiss that Plaintiffs' claims are "equitable in nature" and Plaintiffs must therefore satisfy the requirements of equitable estoppel. Defs.' Mot. to Dismiss at 21-22. Apparently abandoning the equitable estoppel basis for their argument, in their reply brief Defendants claim Plaintiffs have failed to sufficiently plead a material misrepresentation, reliance, and causation as essential elements of any misrepresentation claim. Defs.' Reply at 9-10. This argument was not presented in Defendants' motion to dismiss and has not been fully briefed by Plaintiffs. *See* Pls.' Unopposed Mot. to File Resp. to Supplemental Authority Filed by Def. at n. 2 [#86] ("Defendants have not briefed this argument in their Motion, which instead argues that all of Plaintiffs' statutory claims are actually equitable estoppel claims, and that reliance is a necessary element of equitable estoppel...Plaintiffs would request leave to present such arguments to the Court in full, in the even[t] that Defendant were to claim that this Court should follow the *Radio Shack* court's reliance analysis."). This is a moot point, however, as Defendants' materiality, reliance, and causation arguments fail on the merits.

Plaintiffs allege Defendants breached their duty to inform plan participants by withholding important company information and conveying inaccurate information regarding the soundness of Dell stock. Second Amend. Compl. ¶¶ 137-138. Specifically, Plaintiffs claim Defendants included "materially misleading and inaccurate SEC filings and reports" in official Plan documents which

were disseminated directly to all Plan participants. *Id.* at ¶ 138. Plaintiffs further allege, "Had such disclosures been made to participants, or Plan fiduciaries, if any, who were not aware of facts alleged herein, participants and fiduciaries could have taken action to protect the Plan, and the disclosure to participants itself, which necessarily would have been accompanied by disclosure to the market, would have assured that any further acquisitions of Dell stock by the Plan would have occurred at an appropriate price." *Id.* at ¶ 139. Finally, Plaintiffs claim:

> As a consequence of the Communications Defendants' breaches of fiduciary duty, the Plan suffered tremendous losses. If the Communications Defendants had discharged their fiduciary duties to prudently disclose material information, the losses suffered by the Plan would have been minimized or avoided. Therefore, as a direct and proximate result of the breaches of fiduciary duty alleged herein, the Plan, and indirectly Plaintiffs and the other Class members, lost millions of dollars of retirement savings.

*Id.* at ¶ 142. Whether a misrepresentation is material or not is a mixed question of law and fact and, along with reliance and causation, a question better decided based on evidence presented at trial or summary judgment. *See Shirk v. Fifth Third Bancorp*, 2007 U.S. Dist. LEXIS 26534, *37-38 (S.D. Ohio 2007). For these several reasons, the Court finds the Plaintiffs have stated a claim for failure to provide complete and accurate information to participants and beneficiaries under Fed. R. Civ. P. 12(b)(6) and denies the Defendants' motion to dismiss.

## Conclusion

In accordance with the foregoing:

IT IS ORDERED that Plaintiffs' Unopposed Motion for Leave to File Supplemental Authority in Further Opposition to Defendants' Motion to Dismiss [#80], Defendants' Unopposed Motion for Leave to File Supplemental Authority in Further Support of Defendants' Motion to Dismiss [#83], Plaintiffs' Unopposed Motion for Leave to File

Response to Supplemental Authority Filed by Defendants [#86], and Plaintiffs' Unopposed Motion for Leave to File Response to Defendants' Notice of Supplemental Authority in Further Support of Defendants' Motion to Dismiss [#88], all being unopposed, are GRANTED.

IT IS FURTHER ORDERED that Defendants' Unopposed Notice of Supplemental Authority in Further Support of Defendants' Motion to Dismiss [#87] is construed as a motion to file supplemental authority and GRANTED.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss [#74] is GRANTED IN PART as to Count I, breach of fiduciary duty of prudence, in its entirety and Counts III and IV, failure to monitor and co-fiduciary liability, insofar as they rely on Count I as the underlying breach of fiduciary duty for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

IT IS FINALLY ORDERED that Defendants' Motion to Dismiss [#74] is DENIED IN PART as to Count II, failure to provide complete and accurate information to participants and beneficiaries, in its entirety and Counts III and IV insofar as they rely on Count II as the underlying breach of fiduciary duty.

SIGNED this the 23rd day of June 2008.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE